Diamond Expansion Bolt Company, Respondent, *v.* U. S. Expansion Bolt Company, Appellant.

First Department, April 13, 1917.

Injunction — unfair business competition — manufacture of unpatented articles — similarity of products caused by design which results in efficiency and economy — ability to undersell competitor — costs — extra allowance.

Where an article of manufacture is not protected by a patent any one is at liberty to copy the form in all its essential features and cannot be charged with unfair competition because his product resembles that of another manufacturer if the adoption of the particular form is necessary to strength, efficiency, durability or cheapness.

Suit to restrain alleged unfair competition on the part of the defendant which manufactures expansion bolts, shields and anchors which are similar in form to those manufactured by the plaintiff. Evidence examined, and *held*, that the similarity in form of the two products did not relate to non-essential features so as to indicate an intent to copy the plaintiff's device and to deceive the purchasing public, but that on the contrary the similarity was in necessary structural features resulting from an endeavor to manufacture the article in the most efficient and cheapest form, and hence the manufacture by the plaintiff should not be enjoined.

It is not the policy of the law to permit a manufacturer under the guise of preventing unfair competition to establish without a patent a perpetual monopoly of the production of any article in common use; it will not assist him to monopolize the most economical, sensible and efficient form in which the device may be embodied and offered to the trade.

The court will not grant injunctive relief merely because the defendant sells his product more cheaply than the plaintiff.

In such suit an extra allowance should not be granted as there is no basis upon which it can be computed.

APPEAL by the defendant, U. S. Expansion Bolt Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of June, 1916, upon the decision of the court after a trial at the New York Special Term.

The judgment awarded plaintiff an injunction and an accounting. An appeal is also taken from an order entered in said clerk's office on the 30th day of June, 1916, granting plaintiff an extra allowance of $500.

*Vincent P. Donihee* and *Samuel W. Banning,* for the appellant.

*Alan M. Johnson* and *Henry B. Corey,* for the respondent.

SCOTT, J.:

This is an action to restrain what plaintiff alleges is unfair competition on the part of defendant and for an accounting. Both parties manufacture and sell expansion shields and anchors to be used in combination with screws to secure objects to concrete or brick walls, floors and other supports. No question is involved of any infringement of patents, nor is there any claim that defendant has copied or simulated any trade mark, or put up its product in packages or cases which even remotely resemble the packages or cases used by plaintiff. The complaint is that defendant has manufactured shields and anchors identical in form, shape and general appearance with those manufactured by plaintiff and by this means has intentionally misled buyers into purchasing its product instead of that of defendant. It is the manufacture and sale of these " Chinese copies " of plaintiff's product, to borrow the words used at Special Term, which is said to constitute unfair competition. In order to comprehend, in detail, the claims of the

contending parties it will be necessary to describe the articles which are the subject of competition.

An expansion bolt or shield is a fastening device used in connection with screws of the larger type known as lag screws to affix objects to bodies composed of brick, stone, concrete or other hard and friable material.  Those with which we are concerned consist of two hemi-cylindrical sections, joined together at one end by lugs, and having an interior circumference smaller at one end than at the other.  In use the expansion shield or bolt is first driven into a hole prepared for its reception.  The lag screw is then screwed into it with the result that the outer surface of the shield or bolt is pressed by the expanding power of the screw hard against the surrounding material.

In order that the bolt or shield shall not readily pull out of the hole, and shall not revolve with the screw which is turned into it, it is necessary that its outer surface shall be furnished with excrescences in one form ·or another designed to prevent both rotation and retraction.  It is with the form and position of these excrescences that this action has to do.  The expansion anchor, which is used in connection with screws of a smaller size, is made of lead, in one piece, smaller at one end than at the other.  It also, and for the same reason, has excrescences on its exterior surface.  It will be seen that these articles are purely utilitarian, and are not objects of taste or fancy in design. The use of these articles seems to have been of comparatively recent date, but has very greatly increased latterly because of the constantly growing use of concrete in construction work.

Several concerns are engaged in the business of manufacturing and selling these shields and anchors, and samples of the various kinds thus produced were put in evidence.  They vary in design and appearance, the variations consisting of differences in the design of the excrescences upon the outside, intended to prevent rotation and withdrawal.  It is quite obvious that the range for such variation is limited, so that it would apparently be difficult for a manufacturer seeking to enter the field in competition to devise shields and anchors which would not copy to some extent one or the other of those already in the market.

The plaintiff's claim, however, is that defendant has abjectly copied its product in non-essential features as well as in those which are essential, and has thereby violated the rules of fair competition. The similarity of design is certainly striking. The general plan of both productions is, as to the shield, that a portion is covered with circumferential corrugations, unbroken when the two hemi-cylinders are held together. At the larger end are eight perpendicular ribs, having eight flat surfaces between them. These ribs are intended to prevent rotation, and on four of the flat surfaces are inscriptions while the other four contain the lugs and slots which hold the hemi-cylinders together. The inscriptions on the flat surface of plaintiff's product are not copied or simulated on those of defendant's product. The similarities between plaintiff's and defendant's lead anchors are of the same description although not so exact in that the circumferential corrugations on plaintiff's anchors are parallel, while those on defendant's are spiral.

The defendant's contention is that if it has copied the essential and salient features of plaintiff's product it is because plaintiff has employed in its design forms and devices most perfect mechanically, both as to use and production, and most economical and convenient as to process of manufacture, and that inasmuch as no patent rights are infringed thereby, defendant or any one else is entitled to produce the articles which it manufactures in their most efficient and economical form, and that no one by adopting and using that form can obtain a monopoly for its use, or prevent others from also using it.

If the forms of shields and anchors manufactured by plaintiff and copied by defendant are in fact the most efficient and economical, it is clear that defendant is right in claiming, since there is no protection by patent, that it or any one is at liberty to copy the form in all its essential features, and one who has so copied it will not be required merely for the sake of changing the appearance of the product to sacrifice strength, efficiency, durability or cheapness. For this there is ample authority. In *Marvel Co.* v. *Pearl* (133 Fed. Rep. 160) it is said: " ' There is nothing about the article as made and sold by the defendants that is not necessary in the making and operation of such an

First Department, April, 1917.                    [Vol. 177.

instrument.  It is made in the form that it must be made in order to accomplish its purpose, and, if the making in that form is any representation that the thing made came from the plaintiff, it is because of the extent to which the plaintiff had made and displayed and sold it before the defendants began.'

" In the absence of protection by patent, no person can monopolize or appropriate to the exclusion of others elements of mechanical construction which are essential to the successful practical operation of a manufacture, or which primarily serve to promote its efficiency for the purpose to which it is devoted. Unfair competition is not established by proof of similarity in form, dimensions, or general appearance alone."

In *Flagg Mfg. Co.* v. *Holway* (178 Mass. 83) HOLMES, C. J., said: " Both zithers are adapted for the use of patented sheets of music, but the zithers are not patented.  Under such circumstances the defendant has the same right that the plaintiff has to manufacture instruments in the present form, to imitate the arrangement of the plaintiff's strings or the shape of the body.  In the absence of a patent the freedom of manufacture cannot be cut down under the name of preventing unfair competition.  *  *  *  All that can be asked is that precautions shall be taken, so far as are consistent with the defendant's fundamental right to make and sell what he chooses, to prevent the deception which no doubt he desires to practice.  It is true that a defendant's freedom of action with regard to some subsidiary matter of ornament or label may be restrained, although a right of the same nature with its freedom to determine the shape of the articles which it sells.  But the label or ornament is a relatively small and incidental affair, which would not exist at all, or at least would not exist in that shape but for the intent to deceive; whereas the instrument sold is made as it is partly at least, because of a supposed or established desire of the public for instruments in that form.  The defendant has the right to get the benefit of that desire even if created by the plaintiff.  The only thing he has not the right to steal is the good will attaching to the plaintiff's personality, the benefit of the public's desire to have goods made by the plaintiff."

Commenting upon this case, Nims on Unfair Business Competition summarizes it as follows: " The law of unfair competi-

tion cannot give to one dealer the sole right to use that form, even though he may have been the first one to make zithers in that manner.   This would be an instance of secondary meaning which attaches to a process or form of manufacture and not to a person.   The result of the difference has been noticed in the chapter on Geographic Names, in referring to names indicating process.   It is this: No one can obtain the sole right to a name or article which has become attached to a process; but one may acquire valuable and distinct rights to a name or form of goods which has become associated with his personality. The first maker of zithers in this particularly desirable style may have created a desire on the part of the public for one of two things, either for zithers made by *him*, above all other zither makers, or for zithers made in a particular form regardless of who makes them.   The law of unfair competition is interested in the first of these conditions — the one attaching to the personality.   But the fact that the demand for zithers has been created by the plaintiff will not put the case within the unfair competition rules, where the demand is for the article, not the personality." (§ 147.)

In *Fairbanks* v. *Jacobs* (3 B. & A. Patent Cases, 108, Southern District of N. Y.) the defendant had made an identical imitation of plaintiff's scales, by using the parts of one of the latter's scales to form the moulds for casting defendant's scales, thus making so close a copy that, as the court assumed, it was not only difficult but impossible to discriminate between them.   Still the court held that there had been no invasion of plaintiff's rights, saying: "An invention of structure a patent for the invention secures; a design is secured by a patent for that.   Apart from these, any one may make anything in any form, and may copy with exactness that which another has produced, without inflicting any legal injury, unless he attributes to that which he has made a false origin, by claiming it to be the manufacture of another person.   Any other doctrine is impossible to be maintained; for, otherwise, all the colors, all the unessential forms, could be monopolized as trade-marks, and exclusive rights would be created, not limited in time, as patents are, founded upon no public utility, and subject to no control but the will of the adopter.   I think there is no differ-

ence in the cases on this subject. *Amoskeag Manufacturing Co.* v. *Spear*, 2 Sandf. [4 Sup. Ct. Rep.] 599; *Gillott* v. *Esterbrook*, 47 Barb. 455; *Newman* v. *Alvord*, 49 Barb. 588."

Many other authorities might be quoted to the same effect, but to do so would only swell this opinion to an inordinate length. Of the rule of law which they illustrate I do not understand that there is any question. There is undoubtedly another line of cases, freely cited by respondent, which support the proposition that one manufacturer may not lawfully simulate the non-essential features of a rival's product with a view to palming off his product upon the public as that of his competitor. It becomes important, therefore, to examine whether the defendant has wantonly copied such non-essential features of plaintiff's shields and anchors, or whether it has confined itself to copying those which are essential to the highest efficiency and the greatest economy in manufacture. Counsel for the plaintiff have scheduled in their brief the various features which as they say are " unessential details which [defendant] slavishly copied." It is fair to assume that they have omitted none as to which such claim could be plausibly made. As to all or nearly all of these the court at Special Term made specific findings, or findings which apply to them, and it will be instructive to compare the defendant's claims with the findings. Among the alleged similarities in non-essentials are the following, adopting the numbering used in the brief.

First as to the iron lag shields:

1. Length the same.

2. External diameter or circumference the same.

3. Proportion of exterior surface allotted to transverse ribs the same.

4. Proportion of exterior surface allotted to longitudinal ribs the same.

5. Relative proportion and arrangement of the transverse and longitudinal ribs the same.

8. The ends of the longitudinal ribs merge or abut into the first transverse rib the same.

As to these points of similarity the court made the following findings:

61. That the length, external and internal diameter, thread-

ing and thickness of walls of the defendant's lag screw shields are to the recognized standard sizes of the drills used in making the holes into which the expansion shields are inserted, and with respect to the diameter and size of the bolts and screws used to effect the expansion of the shields, and that substantially the same dimensions are common to many other makes of expansion bolts on the market.

62. That the proportionate amount of such space varies in different sizes of expansion shields made by the Diamond Expansion Bolt Company and that there is no one established proportion which is common to all of the sizes of said shields, and that the proportion of such spacing varies in various sizes of the defendant's shields.

63. That the ends of the longitudinal ribs are merged into the first transverse rib to meet the best standard practice in the making of patterns and castings.

6. Number of transverse ribs and the spacing between them the same.

7. Number of longitudinal ribs and the spacing between them the same.

The findings as to these similarities are as follows:

71. That circumferential corrugations upon the shields and anchors of the defendant are necessary to prevent withdrawal of the bolts when subjected to strain in use.

72. That the longitudinal ribbing of the lead anchors manufactured by the plaintiff is not uniform in all cases.

73. That the transverse corrugations on the iron shields manufactured by the plaintiff are not uniform in all cases, some of the shields displaying flat bottom corrugations, and some of the shields displaying round bottom corrugations.

9. Two lines of lettering on each half between the longitudinal ribs the same.

10. The same number of vacant or unlettered spaces between the longitudinal ribs and similarly located the same.

11. Location and style of lettering the same.

As to these points of similarity the court made the following findings:

64. That the arrangement of the lettering on the U. S. E.

shields is such that all the lettering necessary to identify the make and style and size of the shield is provided for in the most convenient and satisfactory manner and in such a way as to avoid the necessity for providing lettering on the marginal portions of the shield which carry the interlocking lugs and slots.

65. That the arrangement of vacant and lettered spaces is in conformity with necessary practice in the making of patterns and castings in that the letters are all formed in position to draw readily from the mould in such a way that they will be clean and legible in the completed casting.

66. That the style of lettering differs in the plaintiff's and the defendant's shields, plaintiff's shields employing the so-called block type of lettering, and defendant's shields the so-called hair-line type of lettering.

12. Thickness of walls of the two halves or hemi-cylinders the same.

This similarity is accounted for and explained in the 61st finding above quoted, by which it appears that the thickness of the walls on defendant's shields is necessary to meet the standard sizes of the drills used in making the holes into which the shields are to be inserted, and the standard diameter and size of the lag screws to be used.

13. Shape of lugs for holding the two halves together the same.

Upon this subject the court has found:

67. That the lugs employed on the defendant's shields for holding the halves together are of ordinary and usual shape and location employed by other manufacturers for similar purposes.

14. Length of internal screw thread or proportion of interior screw threaded the same.

15. The internal screw thread is the same kind and the same size and the same in appearance.

These similarities appear to be accounted for and explained in the 61st finding quoted above as being rendered necessary to receive lug screws of standard makes and sizes.

16. Point or location at which pouring or opening was made in casting the same.

17. Small portion of surplus metal left at that point.

The finding upon this subject is as follows:

68. That the pouring point in the casting of the U. S. E. shields is located to conform to necessary pattern and foundry requirements, and that the surplus metal remaining at this point is due to this circumstance.

18. Exterior and finish of the entire shield the same, so much and so completely so as to be obviously and undeniably the result of a studied and skilled effort to absolutely reproduce plaintiff's device.

The court's finding as to the finish of the shields is as follows:

69. That the finish of the U. S. E. shields results from the practice obtaining in the respective foundries where the castings of expansions of various manufacturers are customarily made, and that said U. S. E. shields are finished by the usual and desirable sand-blast method now in general use in finishing small castings.

Thus it appears that every one of the similarities between plaintiff's product and that of defendant's and which is cited by plaintiff as a non-essential feature of defendant's shield, is found by the Special Term to be essential in the sense that it is rendered necessary either for efficiency in service, or for economy in manufacture, so that it would be less perfect, less efficient and less economical to produce if any one was omitted. A witness named Morley, who testified for the present plaintiff in another action, and whose evidence was read into the record in the present case, said very positively that plaintiff's shield, which defendant is charged with copying, was more satisfactory and gave a greater safety of holding than any other similar device. This being so, defendant was entitled to produce one just like it, because it had a right to make shields in the most efficient and cheapest form.

As regards the lead anchors to be used with smaller sizes of screws fewer similarities are pointed out by plaintiff as non-essentials, and as to them also the findings make it abundantly clear that they are essentials, in the sense above specified, in that they make for efficiency and economy.

As has already been said, there is no question in the case of any patent infringement or of taste in ornamentation or of simulation or misuse of plaintiff's trade marks. On this subject the following findings of the Special Term are instructive.

**564** DIAMOND EXPANSION BOLT CO. *v.* U. S. EXPANSION B. CO.

First Department, April, 1917. [Vol. 177.

58. That in the making and maintenance of patterns for the iron shields of the defendant, the cost was reduced as compared with the making and maintenance of patterns of any other direct form.

59. That in the casting of the U. S. E. shields the percentage of loss due to imperfect castings is less than in any form of different formation.

60. That the defendant manufactured and sold all of its direct expansion iron shields and lead anchors with its trade mark U. S. E., legibly moulded on each and every article.

77. That the defendant advertised and offered its products for sale under its own name, labels and trade mark upon its goods, boxes, containers, notices, advertisements and letters.

78. That there is no similarity of any of the trade marks, labels or containers of the defendant and those of the plaintiff.

Under the authorities cited in an earlier part of this opinion the defendant, in view of the findings above quoted, acted within its legal rights in manufacturing and selling the shields and anchors which it has been enjoined from making and selling. If so it is immaterial whether or not it sought to enter the market as a competitor of plaintiff. This also it had a right to do. It is not the policy of the law to permit a manufacturer, under the guise of preventing unfair competition, to establish, without any patent, a perpetual monopoly in the production of any article in common use; it certainly will not assist him to monopolize the most economical, sensible and efficient form in which the devices themselves may be embodied and offered to the trade. "The type in question has no characteristics in particular, except that of utility; and, if the. bill could be sustained, the plaintiff would obtain a perpetual patent * * * running indefinitely, without any assistance from the Patent Office of the United States. On putting the proposition in this form, it is so clearly met by the law that it needs no discussion." (*Keystone Type Foundry* v. *Portland Pub. Co.*, 180 Fed. Rep. 301, 303; affd., 186 id. 690.)

We find no evidence that defendant has made any effort, aside from the alleged copying, to palm off its product as that of the plaintiff. Three instances are given where some confusion and substitution were met with on the part of dealers,

but evidence was offered that many other cases occurred wherein dealers apparently sold different makes of shields, not defendant's, indiscriminately. Indeed, there appears to be no valid ground for any attempted substitution on the score of the superior excellence of one product over the other. If dealers do attempt to substitute it will be because defendant sells its product much cheaper than plaintiff sells its. This fact doubtless constitutes plaintiff's chief grievance, but it is not one which a court of equity will abate by injunction.

As to the appeal from the order granting the extra allowance, but little need be said in view of the conclusion at which we have arrived on the main appeal. It is sufficient to say that there is no basis upon which an allowance could be based, as there is nothing by which to estimate the value of the subject-matter involved. (Code Civ. Proc. § 3253.)

It follows that both the judgment and order appealed from must be reversed, with costs and disbursements, and since upon the facts found by the trial court and not excepted to by plaintiff the latter is not entitled to any judgment, the complaint is dismissed, with costs.

CLARKE, P. J., LAUGHLIN and DAVIS, JJ., concurred.

Judgment and order reversed, with costs and disbursements, and complaint dismissed, with costs. Order to be settled on notice.