**MARTIN v. SELIGMAN.**

**MARTIN**

v.

**SEARS ROEBUCK & CO.**

United States District Court
S. D. New York.
Feb. 26, 1954.

Maxwell E. Sparrow, New York City, for plaintiff.

James & Franklin, New York City, By Maxwell James, Harold James, New York City, of counsel, for defendant.

GODDARD, District Judge.

These are two actions consolidated for trial, one for patent infringement and unfair competition against the defendant, Seligman, and the other for patent infringement against the defendant, Sears Roebuck and Co. Defendants deny the allegations and allege invalidity of the patent.

Patent No. 2,014,904, for a Combined Carrying Bag and Work Basket, was issued to plaintiff on September 17, 1935, and plaintiff began to manufacture this article in 1938. After a modest beginning, sales steadily increased so that by 1944 he had sold 250,000 pieces, an average of about 40,000 pieces a year. From 1944–1946, sales were curtailed and eventually ceased because of the war.

In 1939, one of plaintiff's chief customers was Musgrove Mills, a jobber in Germantown, Pennsylvania. In 1941, plaintiff agreed with Musgrove that plaintiff would sell his entire output to Musgrove and this arrangement continued until plaintiff ceased operations in 1946. Musgrove, in turn, marketed these baskets, selling to, amongst others, the defendants, Seligman and Sears.

The baskets sold by Musgrove were shipped directly from the plaintiff to Musgrove's customers. However, at Musgrove's direction, plaintiff billed it to the customer showing Musgrove as the shipper, and plaintiff's name was not to appear on the bills. While all the goods contained the label "Bagsket, patented, Musgrove Mills, Germantown, Penna.", only some of the goods bore the patent number. "Bagsket" was plaintiff's trade-mark.

After the war, plaintiff resumed manufacture in 1947. However, at this time, he eliminated Musgrove as a distributor and he decided to sell directly to the retail trade. From 1947 to 1951, plaintiff sold only 71,500 pieces [6,000 in 1947; 12,750 in 1948; 18,900 in 1949; 18,600 in 1950, and 15,250 in 1951]. From 1947 to 1950, he attempted to regain the trade of Sears but was unsuccessful.

Defendant, Seligman, who had been in business since 1938 selling a line of knitting bags which were manufactured for him by contractors, ceased buying the baskets from Musgrove in 1942 or 1943. After plaintiff resumed manufacture in 1947, Seligman attempted to buy plaintiff's basket but was refused. About June, 1950, Seligman began to manufacture his own version of the basket, the alleged infringing product, and he was able to sell it to Sears, among others. From the time he began in 1950, until September, 1952, he sold a total of 800 to 900 dozen pieces in all. Initially, Seligman did not label his product but in the early part of 1951 he placed his label "Styled by Seligman" in all the baskets he manufactured.

Plaintiff terminated his business on December 31, 1951 and sold his machinery to a New England firm which continues to make plaintiff's product and pays plaintiff royalties on it. Plaintiff's patent expired on September 17, 1952.

Plaintiff seeks damages for infringement from Seligman and Sears up to the date of expiration of the patent and he seeks an accounting of the profits from the alleged unfair competition by Seligman to December 31, 1951, when plaintiff ceased doing business. Notice of infringement was served by plaintiff on Seligman on December 5, 1950, and on Sears on March 14, 1951.

### Patent Suit.

The product involved in the suit is a combined carrying bag and work basket, constructed of a fabric bag built upon a

collapsible wooden frame, designed to carry knitting materials. Plaintiff charges infringement of claim 1 of the Martin patent. His claim 1 reads:

"1. In combination, a pair of frames each consisting of a pair of centrally pivoted legs, rods extending between said frames and connecting the upper and lower ends of the legs of one frame with corresponding legs of the other frame, an endless belt of flexible material extending around the lower rods and constituting means to limit opening of said frames, and sides of flexible material extending up from the upper sides of said belt, two of the sides being connected to the upper rods."

The file wrapper shows that the Patent Office, in allowing the application, cited one patent, Wever Patent No. 241,765, of May 17, 1881.

■ The defendants refer to several patents as evidence of the prior art. They chiefly rely on the Morgan patent, No. 1,310,669, issued on July 22, 1919, as an anticipation of the Martin patent.

The Morgan patent claims:

"A folding clothes basket, consisting of intersecting bars pivoted together, cross pieces connecting the upper ends of the bars, and other cross pieces connecting the bars below the pivotal connection between said bars, a fabric receptacle connected at its ends to the cross pieces which are fastened to the upper ends of said bars, a sheet of fabric connected to the lower cross pieces and to which said receptacle is fastened its entire length, said sheet of fabric serving to hold the bottom of the receptacle down as the latter is opened."

In the Morgan patent, which was not cited by the Patent Office on the Martin application, the sheet of fabric connected to the lower cross pieces necessarily limits the opening of the frames.

"A mere change in an existing means involving a difference only in form, proportions, size, or degree, ordinarily does not constitute invention, at least where it involves doing substantially the same thing in the same way, by substantially the same means, although with better results, and amounts only to a mere carrying forward or more extended application of an original idea of another." 69 C.J.S., Patents, § 56, pages 276, 277.

Both the Martin patent and the Morgan patent disclose folding work baskets. In the Martin patent the legs are pivoted at the center whereas in Morgan they are pivoted somewhat below center. However, that has no patentable significance. The Martin patent utilizes a so-called endless belt, at the bottom of the bag to limit the opening of the frames, whereas in Morgan it is a single sheet of fabric.

The Martin endless belt is a sheet of fabric which passes around the lower cross pieces and has its ends sewed together. Thus, the cross pieces, when the frame is collapsed, slide between the upper and lower sides of the belt. The upper side of the belt is stitched to the bottom side edges of the receptacle and it thus serves, as the specifications indicate, to hold the sides of the receptacle vertical when the frame is open, as well as to limit the opening of the frame. In the Morgan basket, the bottom sheet is stitched around each lower cross piece of the frame. It is not stitched at the sides of the receptacle but is stitched at the center of the bottom of the bag. It thereby serves to limit the opening of the frames, and it holds the center of the bottom of the bag down when the frames are open, to insure the full opening or expansion of the bag.

■ That the Morgan patent is an anticipation of the Martin patent in every aspect save the so-called endless belt principle is obvious from a comparison of the claims. That the endless belt of the Martin patent serves substantially the same function as the bottom sheet of Morgan is also apparent. Martin's endless belt may be some im-

provement over the Morgan basket, but it is not patentable unless the difference between his product and those disclosed by the prior art involved invention. In re Pentz, 1947, 162 F.2d 226, 34 C.C. P.A., Patents, 1109; Application of Craige, 1951, 189 F.2d 620, 38 C.C.P.A., Patents, 1114. Nothing short of invention or discovery will support a patent. Hamilton Mfg. Co. v. Illinois Surgical Supply Co., 7 Cir., 1952, 193 F.2d 938.

■ Insofar as the Martin patent is an improvement over the Morgan basket, it is a mere refinement of Morgan. There is neither "flash of creative genius" nor "exceptional imaginative talent" therein. It is the product of no more ingenuity than "the work of a mechanic skilled in the art", and as such it is not patentable invention. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 86 L. Ed. 58; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

I find that the Martin patent in suit is invalid for lack of invention over the prior art.

### Unfair Competition.

About June, 1950, Seligman began to market his own basket, the sale of which is said to be unfair competition. Plaintiff's baskets, on the market since the resumption of his business after the war, were labelled with plaintiff's trademark "Bagsket", while Seligman did not label his baskets at all until early in 1951 when he inserted in them his label "Styled by Seligman".

Both plaintiff's and defendant's baskets function in like manner. Although there are substantial similarities in appearance, defendant's basket is distinguishable. Defendant's basket, when opened, is smaller and lower than plaintiff's when in a like position. Defendant's is constructed with an inner rayon lining contrasting in color with the outer fabric, whereas plaintiff's is unlined, and defendant's is generally of better construction. It is sold for a higher price. Both baskets were made in a variety of fabrics and it is not charged that defendant copied plaintiff's fabrics.

■ The essence of the wrong of unfair competition is selling the goods of one manufacturer or vendor as those of another, and unless the defendant sells its goods as those of the plaintiff the action fails. Lewis v. Vendome Bags, 2 Cir., 1939, 108 F.2d 16, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008. It is not enough that the baskets are similar in appearance, because, in the absence of a valid patent, a manufacturer may copy the product of another where there is neither passing off nor proof of secondary meaning. Paramount Industries, Inc. v. Solar Products Corp., 2 Cir., 1951, 186 F.2d 999.

■■ There is no evidence of an attempt by the defendant, Seligman, to palm off his basket as that of the plaintiff. In fact, the defendant distributed circulars amongst his customers, which pictured his basket with his other products, and which clearly identified Seligman as the producer.

In the absence of palming off, plaintiff must establish that his product acquired a secondary meaning and that the sale of defendant's basket would be likely to produce confusion. General Time Instruments Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853. It is an absolute condition of relief that the plaintiff show that the appearance of his wares has in fact come to mean that some particular person makes them, and that the public cares who makes them. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299.

Although Seligman had sold plaintiff's basket prior to the war, there was a lapse of seven years until the time he began to sell his own, during which time he did not sell this model at all. Seligman's customers were chain, department, and specialty stores. There is no proof that they had come to identify this type of basket with the plaintiff, nor with any particular manufacturer. In view of the long lapse of time when defendant did not sell this model; that defendant's basket was distinguishable

from plaintiff's; that defendant made no attempt to simulate plaintiff's trademark; and that he sold his basket at a higher price and his circulars identified him as the source, it is not at all likely that such a sophisticated group of buyers would confuse his basket with that of the plaintiff. There is no evidence that they did.

With regard to the ultimate purchasing public, it does not appear that they ever identified such a basket as being the product of any particular source or manufacturer. There is no proof of public acceptance of this style product as distinctively plaintiff's work and it does not appear that there was ever any extensive advertising or promotion campaign by the plaintiff to educate the public into such acceptance. Until the public had so accepted it, there could be no confusion. There was no showing of any actual confusion.

Although plaintiff makes much of the fact that from June, 1950 until early 1951, defendant used no label to identify his basket, the fact is that no secondary meaning had attached to this style basket. Thus there could be no confusion. For anyone who wanted plaintiff's basket and no other basket, they could identify it by his trademark "Bagsket."

The defendant had the right to sell his basket in competition with the plaintiff's in the absence of any secondary meaning attaching to plaintiff's product. Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416; Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 1945, 147 F.2d 500; Lewis v. Vendome Bags, supra. As the court stated in Crescent Tool Co. v. Kilborn & Bishop Co., supra, 247 F. at page 300:

"The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source. Unless the plaintiff can answer this question he can take no step forward;

no degree of imitation of details is actionable in its absence."

Since the plaintiff's patent is invalid and there is no proof of unfair competition, the defendants may have decrees dismissing the complaints.

The foregoing shall constitute Findings of Fact and Conclusions of Law.