31 N.J. Super. 217 (1954)
106 A.2d 322
SQUEEZIT CORPORATION, PLAINTIFF-APPELLANT,
v.
PLASTIC DISPENSERS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided June 16, 1954.
*220 Before Judges CLAPP, SMALLEY and SCHETTINO.
Mr. Walter D. Van Riper argued the cause for plaintiff-appellant (Messrs. Van Riper and Belmont, attorneys).
Mr. Thomas J. O'Neill argued the cause for defendant-respondent (Messrs. Crummy, Consodine & Gibbons, attorneys; Mr. Norman N. Popper, of counsel).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This appeal is taken from a judgment of the Chancery Division of this court dismissing plaintiff's complaint. Plaintiff sued to enjoin alleged unfair competition by the sale and distribution of a plastic catsup dispenser and for an accounting of profit.
Defendant produces, like the plaintiff, a dispenser in a shape resembling a tomato, colored either red and yellow, and adorned by a green leaf and stem on top. The dispenser is a household item, which when its plastic side is squeezed dispenses catsup or mustard through a spout on top. The dispenser's design was created by plaintiff. It has sold over 2,890,000 Squeezits, with gross sales of $1,570,000 since 1952. The appealing tomato shape and color of the dispenser is the feature which is attributed to its wide and successful sale.
*221 Both containers are practically identical in size, shape, color and use but are packaged in display cartons clearly distinguishable. Upon each carton different trade names were stamped, the plaintiff used the descriptive trade name of "Squeez-it" and defendant, the name "E-Z-Flow."
The plaintiff concedes that it does not possess the exclusive right to make or sell tomato catsup or mustard dispensers. But it claims the exclusive right to make such dispensers in the shape of a tomato and to color it red or yellow. It charges that the defendant, by using the same colors and shape, is passing off, or enabling others to pass off, "E-Z-Flow" for "Squeez-it," and that such actions by defendant is unfair competition. Defendant asserts that it has used every reasonable effort to distinguish its product from that of the plaintiff; and contends that it is honestly competing for a part of the dispenser market and that it has the right to sell an article unprotected by patent.
While plaintiff's claim does not pose substantial difficulties, its subject-matter is a field of tort law of relative recent development involving many unsettled or doubtful questions of substantive law. The concept and theory of unfair competition is unclear and may change from one decade to the next. Ellis, Trade Secrets § 9 (1953)
The trend of this developing field is well stated by Judge Goodrich in Q-Tips, Inc., v. Johnson & Johnson, 206 F.2d 144, 145 (C.C.A. 3 1953):
"* * * we are in a field where the tendency of the law `has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.' Restatement, Torts, Vol. III, page 540."
The grounds upon which relief is granted were described in an early New Jersey decision as follows:
"either that the means used are dishonest, or that, by imitation of name or device, there is a tendency to create confusion in the trade, and enable the seller to pass off upon the unwary his goods as those of another, and thereby deceive the purchaser; or that, by false *222 representation, it is intended to mislead the public, and induce them to accept a spurious article in the place of one they have been accustomed to use." Vitascope Co. v. U.S. Phonograph Co., 83 F. 30 (C.C.N.J. 1897).
In Newburgh Moire Co. v. Superior Moire Co., 116 F. Supp. 759, 764 (D.C.N.J. 1953) the court said: "The essence of unfair competition is the practice of palming off one's product as that of another."; Bunn, The National Law of Unfair Competition, 62 Harv. L. Rev. 987 (1949). Cf. Kleinman v. Betty Dain Creations, Inc., 189 F.2d 546 (C.C.A. 2 1951). At the outset it should be stated that the proofs do not disclose any substantial evidence of an attempt to palm off its product or of any attempt at deception or misrepresentation or other unfair trade practices, or that the general public confused defendant's dispenser with that of plaintiff.
In the absence of a patent, there is nothing to prevent the imitation or reproduction of a product provided the imitator does not misrepresent to the public that his product is made by others or cause confusion as to whose product it is or that the product has not yet acquired a secondary meaning or an identification coming from appearance. French American Reeds Mfg. Co. v. Park Plastics Co., 20 N.J. Super. 325, 90 A.2d 50 (App. Div. 1952); Ferber Corporation v. Northern Industrial Products, Inc., 15 N.J. Super. 283, 83 A.2d 372 (Ch. Div. 1951), affirmed per curiam 18 N.J. Super. 493, 87 A.2d 549 (App. Div. 1952); Martin v. Seligman, 119 F. Supp. 258 (D.C.S.D.N.Y. 1954); Paramount Industries, Inc. v. Solar Products Corp., 186 F.2d 999 (C.C.A. 2 1951). Of course, where the imitation is obtained by fraud or breach of confidential relation, the copying will be enjoined. Booth v. Stutz Motor Car Co. of America, 56 F.2d 962 (C.C.A. 7 1932).
It is contended that plaintiff has the exclusive right to the shape of the dispenser and its colors, because these acquired the "secondary meaning" of catsup dispensers made only by plaintiff. Secondary meaning has been defined as *223 "an identification of an object of commerce with a single source  even though unnamed  and an interest on the part of the consuming public in buying because of that source." Mastercrafters C. & R. Co. v. Vacheron & Constantin, etc., 119 F. Supp. 209, 213 (D.C.S.D.N.Y. 1954); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Columbus Plastic Products, Inc., v. Rona Plastics Corp., 111 F. Supp. 623, 625 (D.C.S.D.N.Y. 1953); General Time Instruments Corp. v. United States Time Corp., 165 F.2d 853 (C.C.A. 2 1948).
"It is an absolute condition of relief that the plaintiff show that the appearance of his wares has in fact come to mean that some particular person makes them, and that the public cares who makes them." Martin v. Seligman, 119 F. Supp. 258, 261 (D.C.S.D.N.Y. 1954).
There is no basis here for applying the doctrine of secondary meaning.
No evidence was produced at the trial that Squeez-it customers had come to identify the dispenser with plaintiff, nor for that matter, with any particular source. Since the cartons distinguished the products, it is unlikely that the customer would confuse defendant's dispensers with that of the plaintiff. There is no evidence that the cartons actually confused the products or that any secondary meaning had attached to plaintiff's product. The evidence shows that plaintiff was the first manufacturer in the field and had obtained phenomenal sales success. This is not enough. It must show that the product has attained a primary significance in the minds of the consuming public which is attached to the producer and not to the utilitarian function of the product. In the absence of any secondary meaning attaching, defendant has the right to sell his catsup and mustard dispensers in competition with plaintiff and to cash in on the good will created by the latter. Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 229 (C.C.A. 2 1917); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. *224 109, 83 L.Ed. 73 (1938); Chas. D. Briddell, Inc., v. Alglobe Trading Corp., 194 F.2d 416 (C.C.A. 2 1952).
"The law of unfair competition does not give to one dealer the sole right to use a certain form or shape or feature of merchandise even though he may have been the first one to use it." 1 Nims, The Law of Unfair Competition and Trade-Marks, § 134, p. 373 (1949).
Here the demand is for the product itself, and not the personality of the creator. Diamond Expansion Bolt Co. v. U.S. Expansion Bolt Co., 177 App. Div. 554, 164 N.Y.S. 433 (Sup. Ct. 1917). In Maytag Co. v. Meadows Manufacturing Co., 35 F.2d 403 (C.C.A. 7 1929), both parties' washing machines were painted the same color and had the same rectangular shape. Unfair competition was not established by merely showing similarity in general appearance. In Marvel Co. v. Tullar Co., 125 F. 829 (C.C.S.D.N.Y. 1903), a case strikingly like the one sub judice, identical spray syringes were packaged in differentiated cartons. The appearance of the product itself, as a principal thing, was not sufficient to restrain the selling of the article. No unfair competition was proven.
A color or even a combination of colors may be copied and may be appropriated  see Nims, supra, § 140, p. 393. In appellant's oral argument, counsel asserted that appellant would be satisfied if defendant was merely enjoined from coloring their dispensers the same colors as plaintiff's. We cannot see how appellant's colored dispensers obtained a secondary meaning or any distinctiveness. The colors used have no other significance than to match the contents of the dispensers. Thus we may say that the color in this respect is a functional part of the product which may be copied. Cf. Yellow Cab Co. v. Knox, 144 A. 11 (Ch. 1923  not officially reported); French American, etc., Co. v. Park Plastics Co., 20 N.J. Super. 325, 90 A.2d 50 (App. Div. 1952); Ferber Corporation v. Northern Industrial Products, Inc., 15 N.J. Super. 283, 83 A.2d 372 (Ch. Div. 1951), *225 affirmed per curiam 18 N.J. Super. 493, 87 A.2d 549 (App. Div. 1952).
The French American case, which involves an imitated ukelele, although distinguishable from the instant case on the grounds that the copying was not so complete and the product itself conspicuously labeled, does assert two obvious principles: (1) establishment of a secondary meaning is a matter of fact, and (2) the burden of its proof is on the plaintiff. Moreover, several factors of importance in furnishing such proof are given: period of time in which the distinctive product has been on market, sales volume, nature and extent of advertising and "efforts to promote a conscious connection in the minds of the public between the product and its source." (20 N.J. Super., at 337.)
Closer to the present litigation on the facts is Ferber Corporation v. Northern Industrial Products, Inc., 15 N.J. Super. 283 (Ch. Div. 1951), where plaintiff considered itself entitled to a monopoly on ball-point fountain pens of translucent plastic because it alleged it had been a pioneer in that field. The trial court rejected this argument. As in the Ferber case, we are in accord that no unfair competition was proven. Mississippi Wire Glass Co. v. Continuous Glass Press Co., 79 N.J. Eq. 277 (Ch. 1911).
Affirmed.