**MARCAL PAPER MILLS, INC.,**
Plaintiff,

v.

**SCOTT PAPER COMPANY,**
Defendant.

**Civ. A. No. 31–66.**

United States District Court
D. New Jersey, Civil Division.

Aug. 7, 1968.

O'Mara, Schumann, Davis & Hession, by James Hession, Jersey City, N. J., for plaintiff; Burns, Doane, Benedict, Swecker & Mathis, J. Preston Swecker and William L. Mathis, Washington, D. C., of counsel.

Pitney, Hardin & Kipp, by Clyde A. Szuch, Newark, N. J., for defendant; Gerald P. Norton, Covington & Burling, by Roberts B. Owen, Washington, D. C., and Robert Bramson, Philadelphia, Pa., of counsel.

## OPINION

COOLAHAN, District Judge:

In this multi-faceted action, plaintiff sues to enjoin defendant from continuing to package certain of its paper products while employing certain symbols, words, and trade dress which plaintiff claims it has the exclusive right to use. Damages, an accounting, and costs are also sought. The first count of the Complaint asserts that defendant has, through its employment of a specific label on certain of its facial tissues, infringed on two of plaintiff's copyrighted labels; jurisdiction of this court is said to be founded on the provisions of 17 U.S.C. § 101. The second count of the Complaint asserts that defendant's use on its toilet tissues of a design designated by plaintiff as a "floret" constitutes unfair competition, in view of plaintiff's long and continued use of the floret on its packaging. Further unfair competition is asserted to be apparent in defendant's trade dress on certain of its facial tissues. Jurisdiction of this court is said to be founded on principles of diversity and pendent jurisdiction. The third count of the Complaint asserts that defendant has, through its employment of the word "Camellia" on its facial tissues, infringed on a registered trademark which plaintiff holds for that word; jurisdiction of this court is said to be founded on the provisions of 15 U.S.C. § 1114. In addition, plaintiff claims that defendant's use of the floret design on all of its facial and toilet tissues constitutes trademark infringement. Since there is no Marcal trademark for the floret, this facet of the action is grounded on purely common-law principles; this court is said to have pendent jurisdiction. Plaintiff also claims that defendant's uses of the floret constitute a false designation of origin, and seeks relief in this court according to 15 U.S.C. § 1125. The case was brought before this court for a trial without a jury; at the end of plaintiff's presentation of its case, the court reserved decision on defendant's motion to dismiss. This opinion will constitute a resolution of that motion.

■ Plaintiff's claim of copyright infringement involves two "Form Kk" copyrights—copyrights for "print[s] or label[s] used for article[s] of merchandise," according to the Patent Office.[1] As with all copyrights, such copyrights are prima facie valid, and this court cannot now consider, at the end of the plaintiff's presentation of its case, defendant's assertion as to invalidity[2] or as to plaintiff's failure to secure copyright protection by the required publication of notice of copyright.[3] As a result, defendant's sole hope for persuading this court that its motion to dismiss on the copyright claim should be granted is its assertion that plaintiff has not, by its presentation of evidence, established that defendant did in fact violate plaintiff's hypothetically valid copyright. It is as to this issue that the court sides with the defendant, and plaintiff's copyright claim will be dismissed.

■ A leading decision in the copyright area is the case of Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946). In that decision, Judge Frank outlined the basic showing a plaintiff must make to establish copyright infringement. As stated by Judge Frank, the two basic facts that a plaintiff must establish are, first, copying, and second, that the copying

1. The copyrights in question are Nos. Kk 128,621 and 188,070. See Appendix A, affixed to the end of this opinion.

2. Rohauer v. Friedman, 306 F.2d 933, 2 A.L.R.3d 1395 (9th Cir. 1962); Wihtol v. Wells, 231 F.2d 550 (7th Cir. 1956); Blazon, Inc. v. DeLuxe Game Corp., 268 F.Supp. 416 (S.D.N.Y.1965); Hedeman Prod. Corp. v. Tap-Rite Prod. Corp., 228 F.Supp. 630 (D.N.J.1964); Addison-Wes-

ley Publishing Corp. v. Brown, 223 F. Supp. 219 (S.D.N.Y.1963); Edward B. Marks Music Corp. v. Borst Music Pub. Co., 110 F.Supp. 913 (D.N.J.1953).

3. Yardley v. Houghton Mifflin Co., 108 F. 2d 28 (2d Cir. 1939); Freudenthal v. Hebrew Pub. Co., 44 F.Supp. 754 (S.D.N.Y. 1942). Cf. Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800 (2d Cir. 1960).

went so far as to constitute "improper appropriation." Evidence of copying may be of two types: a) an admission by defendant that it copied; b) circumstantial evidence. Circumstantial evidence sufficient to show copying, it was pointed out, may consist of sufficiently strong showings by the plaintiff of a combination of a) access by defendant to plaintiff's work; and b) strong similarity between the works. It is the court's view that the plaintiff's proofs in this case have failed to comply with the Arnstein v. Porter standards in every possible respect. There has been no evidence of copying. Firstly, plaintiff has presented no proof of defendant's access to plaintiff's products. If it be maintained, and such a position would not be ludicrous, that the court should take judicial notice of the fact that Scott executives are at least somewhat aware of what the competition is doing, plaintiff's proofs also fail on the second, similarity, question. The court's examination of the plaintiff's copyrighted labels and of the defendant's allegedly infringing facial tissue label [4] convinces it that there is no similarity whatsover between the two designs. Although certain *elements of the two products*, such as the florets contained on both and the use of an oval design on both, bear some similarity, the two labels, *viewed as a whole* (and this is the only way they should be viewed in the case of this type of copyright claim),[5] bear no similarity whatsoever. Both labels prominently display the accurate names of the manufacturer; (on all sides of the box); the Marcal name is displayed in a horizontal oval, while the Scott name is displayed in a vertical oval; manifestly, there is no similarity between the two labels. Furthermore, even were the court impressed with the fact that defendant had consciously copied the plaintiff's label, it is entirely convinced that there has been no "improper appropriation" in the present case. As stated in Hedeman Prod. Corp. v. Tap-Rite Prod. Corp., 228 F.Supp. 630, 634 (D.N.J.1964),

> The test of copyright infringement is " * * * whether the work is recognizable by an ordinary observer as having been taken from the copyrighted source. Slight differences and variations will not serve as a defense. The means of expressing an idea is subject to copyright protection and where one uses his own method or way of expressing his idea, * * * such adornment constitutes a protectible work." Bradbury v. Columbia Broadcasting System, Inc. supra, 287 F.2d [478] at p. 485. See Arnstein v. Porter, 2 Cir. 1946, 154 F.2d 464, 468–469.

See also Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966); Williams v. Kaag Manufacturers, Inc., 338 F.2d 949 (9th Cir. 1964); Gray v. Eskimo Pie Corp., 244 F.Supp. 785 (D.Del.1965). Applying the above test, it is this court's finding that no ordinary observer would, upon an examination of the plaintiff's and defendant's labels, consider that defendant's label was taken from the copyrighted sources. The plaintiff's copyright claim will be dismissed.

Plaintiff's unfair competition count raises some very interesting legal questions. As has been adverted to earlier, plaintiff charges that defendant's use on

---

4. The infringing labels are exemplified by plaintiff's exhibit 290 in evidence. This package has been discontinued for some time.

   The plaintiff's and defendant's labels are reproduced in Appendix A to this opinion.

5. No reliance could possibly be placed, in the circumstances of the present case, on the provisions of 17 U.S.C. § 3—"Protection of component parts of work copyrighted; composite works or periodicals" —as it is clear that that section applies *only* to such composite works or periodicals. As was stated in Markham v. A. E. Borden Co., 206 F.2d 199, 200–201 (1st Cir. 1953), "This section affords a blanket protection, for *magazines, periodicals and the like* * * *." (Emphasis added.)

its toilet tissues of the floret design,[6] and its use on certain of its facial tissues, of a particular trade dress ("spaced floret symbols, color and display matter") constitutes unfair competition. To be disposed of initially is defendant's apparent assertion that the recent United States Supreme Court decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 2d 669 (1964), have entirely done away with the common law of unfair competition. It is the court's view that this was not the case.

■ The *Sears* and *Compco* decisions were based on the doctrine of preemption, the doctrine which holds that "when state law touches upon the area of \* \* federal statutes [enacted pursuant to constitutional authority] it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law." *Sears*, supra at 229, 84 S.Ct. at 787. Applying that doctrine to the facts before it, the Supreme Court in *Sears* and *Compco* held that Illinois unfair competition law, permitting a finding of unfair competition upon a showing by plaintiff of "a likelihood of confusion," was not applicable to a defendant sued for copying an item within the ambit of the patent laws of the United States, although that particular item was not in fact patentable, due to lack of invention. The fact that state unfair competition law requiring only a showing of "a likelihood of confusion" would be in conflict with federal statute

does not, however, decide what result would obtain in the case of state law which requires a stronger showing by a plaintiff, such as a showing that defendant's actions are such as to constitute a "palming off" of plaintiff's products, even assuming that state protection of plaintiff's floret in the present case, where preemption is said to be based on the Lanham Act, 15 U.S.C. §§ 1051–1127, is to be considered in the same manner as in the *Sears* and *Compco* cases where preemption of state protection for plaintiff's industrial design was based on the federal patent laws.[7] The Supreme Court itself answered that question in both the *Sears* and *Compco* decisions. As was stated in *Sears*, supra at 232, 84 S.Ct. at 789:

> Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.[8]

As a result, the inquiry must now necessarily turn to an examination of the law of New Jersey as far as unfair competition is concerned; in view of the fact that New Jersey law effectively requires a showing of "palming off" before an unfair competition cause of action can be sustained, the preemption doctrine of the *Sears* and *Compco* deci-

6. Plaintiff's and defendant's florets are reproduced in Appendix B to this opinion.

7. On this question compare Supreme Court recognition in *Sears* and *Compco* of the propriety of state laws against "palming off" with 15 U.S.C. § 1125, that section of the Lanham Act which recognizes a federal cause of action for "false designation of origin."

8. See *Compco*, supra at 238, 84 S.Ct. at 782:
   As we have said in *Sears*, while the federal patent laws prevent a State

from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make or sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those, who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original.

sions is not applicable, and defendant's apparent objection to the very existence of an unfair competition count in the plaintiff's complaint will not be sustained.[9]

The two possible bases for an unfair competition complaint at New Jersey law were outlined in the decision of Squeezit Corp. v. Plastic Dispensers, Inc., 31 N.J.Super. 217, 222, 106 A.2d 322, 325 (App.Div.1954):

> In the absence of a patent, there is nothing to prevent the imitation or reproduction of a product provided the imitator does not misrepresent to the public that his product is made by others or cause confusion as to whose product it is *or* that the product has not yet acquired a secondary meaning or an identification *coming from appearance*. [citations omitted] (Emphasis added.)

In view of the fact that plaintiff in the present case is not charging that defendant affixed the name "Marcal" to its products, it can easily be seen that the present case is of the second type outlined in the *Squeezit* decision, namely, a complaint that the *appearance* of defendant's packages is too much like that of plaintiff's. This being the case, it is essential to consider whether the plaintiff's florets and trade dress have acquired a secondary meaning.[10]

The basic criteria for a determination of secondary meaning under New Jersey law were stated in the case of French American Reeds Mfg. Co. v. Park Plastics Co., 20 N.J.Super. 325, 90 A.2d 50 (App.Div.1952):

> Various elements may be considered in determining whether a secondary meaning has been acquired. Some of the more important ones are the period of time that has elapsed since the article first appeared on the market in its distinctive "trade dress," the nature and extent of popularizing and advertising the product, sales volume, and efforts to promote a conscious connection in the minds of the public between the product and its source.
> * * *
> The ultimate test of secondary meaning must always remain whether plaintiff's product in its distinctive trade dress has become broadly known to the public as indicating a certain origin.

9. Similarly unsustainable is plaintiff's assertion that its unfair competition claim must be determined according to federal law, as a result of the fact that its complaint asserts pendente as well as diversity jurisdiction. As stated by Professor Moore:

> Now what as to a claim for unfair competition over which the district courts have jurisdiction "when joined with a substantial and related claim under the copyright, patent or trademark laws?" There is much authority that the state law of the forum * * * applies.

1A Moore, Federal Practice ¶0.326, at 3772 (2d ed. 1961). See also Flexitized Inc. v. National Flexitized Corp., 335 F. 2d 774 (2d Cir. 1964); Pezon et Michel v. Ernest R. Hewin Associates, 270 F. Supp. 423 (S.D.N.Y.1967); Spangler Candy Co. v. Crystal Pure Candy Co., 235 F.Supp. 18 (N.D.Ill.1964); National Fruit Prod. Co. v. Dwinell-Wright Co., 47 F.Supp. 499 (D.Mass.1942). But see Bulova Watch Co. v. Stolzberg, 69 F. Supp. 543 (D.Mass.1947).

In any event, it appears that there is no difference whatsoever between New Jersey law and general national principles on the question of unfair competition. See Perfectform Corp. v. Perfect Brassiere Co., 256 F.2d 736 (3d Cir. 1958); Newburgh Moire Co. v. Superior Moire Co., 116 F.Supp. 759 (D.N.J.1953); Squeezit Corp. v. Plastic Dispensers, Inc., 31 N.J.Super 217, 106 A.2d 322 (App.Div.1954).

10. The above analysis should dispose sufficiently of plaintiff's assertion that secondary meaning is not required before unfair competition can be found in New Jersey. Perfectform Corp. v. Perfect Brassiere Co., 256 F.2d 736 (3d Cir. 1958), relied upon by the plaintiff for its assertion, was clearly an unfair competition case of the first type outlined in *Squeezit* above, wherein defendant was charged with having misled the public by having placed plaintiff's trademark "Perfectform" on its products.

Applying the above standards, it is this court's view that plaintiff has failed to sustain its burden of showing that its florets and trade dress have acquired a secondary meaning. Although it is true that plaintiff's proofs sufficiently indicated that it had adopted its floret design as early as 1934,[11] there was no testimony whatsoever which indicated that the plaintiff's advertising over the years since 1934 sought to emphasize that "floret" equalled "Marcal." For example, Jacob John Schmitt, plaintiff's Vice-President for marketing, testified, in response to a question as to whether plaintiff had used the floret in radio advertising: "I don't think we used the word 'floret' in advertising."[12] Earlier, on direct testimony, he had stated, in response to a question as to whether plaintiff tries to identify the manufacturer, through the Marcal name or any symbols, in advertising: "Now I've got to go back, the agency I don't know, *sometime or other, I think* we were referring to Marcal packages with the florets." (Emphasis added.)[13]

In addition, one must note the colloquy that ensued during cross-examination by defendant's counsel of George Riedl, an advertising executive of the firm of Riedl & Freede, plaintiff's advertising agency:

> Q. Other than the one ad which you have here today, which has a reference to daisy [defendant's word for "floret"] in the text, how many other ads do you know of out of the approximately hundred which you have written which contain the daisy in the text?
>
> A. I really couldn't tell you at all because the daisy has to do with a visual association of Marcal and I believe that there are ads with the floret copied on them.
>
> Q. More than one?
>
> A. I couldn't say.
>
> Q. More than two?
>
> A. There must be.

> Q. More than two?
>
> A. Well, I couldn't say   *   *   *.[14]

Whether or not there were more than two ads prepared for plaintiff out of the approximately one hundred prepared for plaintiff by Mr. Riedl's firm which contained textual reference to the floret is irrelevant. Important in both Mr. Riedl's and Mr. Schmitt's testimony is the fact that neither man attempted to maintain, as is apparently the plaintiff's position in the present case, that an important facet of plaintiff's advertising over the years was promotion of an identification in the public mind between the floret design and the word "Marcal." Even assuming, however, that plaintiff *attempted* to promote such an identification, however, the plaintiff's proofs here failed to indicate the really significant factor in the present litigation, namely, whether plaintiff *succeeded* in such a promotion. "The scope, nature and duration of advertising the product are, at best, but factors to be weighed; 'the issue is the achievement of an identity and not the effort expended in the attempted achievement.' " *French American,* supra at 338, 90 A.2d at 57. Plaintiff's proofs in the present case consisted, in the court's opinion, of singularly unimpressive recitations by primarily interested witnesses that it was their opinion that the public associated the floret symbol with the Marcal name. The only other proof sought to be adduced, certain letters to Marcal from its customers, clearly does not support the proposition that any customers picked up the defendant's product thinking it was plaintiff's. Instead, all of the letters introduced by the plaintiff were complaint letters from customers, protesting the fact that plaintiff's placement of the floret design on its transparent packages led them to believe that the paper product within was itself imprinted with the floret in the same manner that defendant has imprinted the floret on its product. Certainly, plaintiff cannot ground its claim

---

11. Tr. at 43.

12. Tr. at 229.

13. Tr. at 212.

14. Tr. at 283.

of confusion on its own promotional obsolescence!

Although it is the court's conclusion that plaintiff has failed to establish through its proofs any secondary meaning for its floret design, this conclusion is not even necessary for a dismissal of plaintiff's unfair competition count to be proper, for in addition to showing secondary meaning, a plaintiff, in order to emerge victorious in an unfair competition complaint, must also show that there is a likelihood of confusion to prospective purchasers as a result of the defendant's activities. *French American*, supra at 333–334, 90 A.2d 50. It is the court's view that the plaintiff has not done so. For one thing, as has been noted earlier, there has been no evidence whatsoever of actual confusion on the part of consumers. In view of the fact that defendant has been marketing products with floret symbols affixed to them for over four years, the absence of proof of actual confusion is relevant to the question of likelihood of confusion. As was stated in 3 Callman, Unfair Competition and Trade-Marks § 83.2(a), at 1570 (2d ed. 1950):

> [A]bsent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time, there arises a strong presumption that there is little likelihood of confusion * * *.

In addition, it is the court's view that, even absent evidence of actual confusion on the part of consumers, the circumstances of the present case do not, on their face, present a case of likelihood of confusion. Although it is certainly true that defendant's seven-petaled floret effectively simulates plaintiff's six-petaled floret, and that the degree of simulation is certainly a factor to be considered in evaluating likelihood of confusion, it also appears that defendant's own distinctive packaging, which amply affords the purchaser the opportunity to learn that defendant is the manufacturer, would not, in the court's opinion, lead a purchaser of ordinary intelligence and prudence to purchase the defendant's product thinking it was plaintiff's.[15] Plaintiff's unfair competition count will be dismissed.

The remaining part of plaintiff's complaint to be considered is the trademark count. The court will first examine the plaintiff's contentions and proofs with respect to its registered trademark of the word "Camellia." As has been noted, it is plaintiff's position that defendant's description, on its packaging, of certain of its facial tissues as being colored "Camellia pink" infringes on plaintiff's registered trademark of the word "Camellia."

As in the case of copyrights, a trademark is prima facie valid. 15 U.S.C. §§ 1057(b), 1115(a). As a result, there can be no challenge of plaintiff's trademark for "Camellia" at this posture of the case, it being the defendant's burden to show invalidity. On the other hand, plaintiff still bears the burden of showing infringement of its hypothetically valid trademark; it is the court's view that plaintiff has failed to sustain this burden of proof.

Initially, however, defendant's contention that "Scott has not used any 'reproduction, counterfeit, copy, or colorable imitation' of any registered Marcal trademark [quoting the language of 15 U.S.C. § 1114, the basis of plaintiff's cause of action]" must be rejected, at the present posture of the case. Essentially, it is defendant's position that its use of the word "Camellia" is descriptive of a certain known color

---

15. See *Squeezit,* supra. See also Zippo Mfg. Co. v. Manners Jewelers, Inc., 180 F.Supp. 845 (E.D.La.1960); Rochelle Asparagus Co. v. Princeville Canning Co., 170 F.Supp. 809 (S.D.Ill.1959); Sylvania Elec. Prod. Inc. v. Dura Elec. Lamp Co., 144 F.Supp. 112 (D.N.J.1956). See generally Treece, "Protectability of Product Differentiation: Is and Ought Compared," 18 Rutgers L.Rev. 1019, 1040–44 (1964).

and that this descriptive usage is not violative of plaintiff's usage of "Camellia" as a trademark. Even assuming, however, that such a usage by defendant would render it not subject to suit by plaintiff, it appears that this contention cannot be recognized by the court at the end of the plaintiff's case, where this matter is now located. Any descriptive usage of "Camellia" would have to be proven by the defendant's presentation. This being the case, the court will assume that defendant's usage of "Camellia" is a "reproduction, counterfeit, copy, or colorable imitation" of plaintiff's usage of "Camellia." On the other hand, plaintiff must prove more than defendant's reproduction, counterfeiting, copying, or colorable imitation. According to the terms of 15 U.S.C. § 1114, it must also prove that defendant's activities are "likely to cause confusion, or to cause mistake, or to deceive." It is in this regard that the court is of the opinion that plaintiff's proofs have failed, and its registered trademark claim will be dismissed.

■ Plaintiff's usage of the term "Camellia" on its facial and toilet tissues is substantially different from defendant's usage of the term on its facial tissues.[16] The plaintiff's use of "Camellia" is most clearly as a trade-name. The word "Marcal" is exhibited only in small lettering on the reverse side of the facial tissue box, and on the side of the toilet paper roll; the word "Camellia" stands prominently on five sides of the box, and in huge lettering on the front and back of the roll, as a product name. In contrast, the defendant's use of "Camellia" is in the context of "Camellia Pink Prints," an obvious color designation printed in small letters on three sides of a box clearly designated as "Lady Scott."[17] It is the court's finding that there is no likelihood whatsoever of confusion between the two companies' products.

The court will not dwell at length on the remainder of plaintiff's trademark cause of action. The propriety of defendant's usage of the floret design on its packaging is once again brought into question; once again the court will reach a result contrary to the plaintiff's position.

■ Plaintiff asserts that defendant's use of the floret on its facial and toilet tissues constitutes a false designation of origin, giving plaintiff a cause of action under 15 U.S.C. § 1124. It is the court's conclusion that this is not the case; plaintiff's floret design, as has been seen, has required no secondary meaning, and it isn't plaintiff's position that defendant affixed the word "Marcal" to its products.

■ Plaintiff maintains that, although it hasn't registered the floret as a trademark, it is still entitled, according to common law principles, to trademark protection. Although there can be no doubt that one need not register a trademark in order to be afforded trademark protection, there can likewise be no doubt, in the circumstances of the present case, that plaintiff's floret has acquired no secondary meaning, and that there is no likelihood of confusion whatsoever between plaintiff's and defendant's products.

All portions of the plaintiff's action will be dismissed. Let an appropriate order be submitted.

---

16. See Appendix C to this opinion.

17. Although it has been noted that any finding by this court that defendant's use of "Camellia" is as a color, and possibly that defendant could, as a result, be said not to have reproduced, counterfeited, copied, or colorably imitated plaintiff's product, would have to await defendant's proofs, this court can no doubt consider, on the question of likelihood of confusion, the *apparent* usage by the defendant of the word, since it is this apparent usage, whether contrived or not, which would most strike the ultimate consumer.

## APPENDIX A

### COPYRIGHTED MARCAL LABEL

**54**

## APPENDIX A

### COPYRIGHTED MARCAL LABEL

## APPENDIX A

### SCOTT LABEL

## APPENDIX B

MARCAL  FLORET

SCOTT  FLORET

## APPENDIX C

### MARCAL PACKAGE — FRONT

## APPENDIX C

### MARCAL PACKAGE — BACK

## APPENDIX C

### SCOTT PACKAGE — FRONT