# CAPE MAY YACHT CLUB

*v.*

## CAPE MAY YACHT AND COUNTRY CLUB.

[Decided April 28th, 1913.]

1. The jurisdiction of courts of equity to prevent injury from infringement of trade-names has been liberally exercised and applied in all circumstances whenever it appeared that the name was an established, distinctive and valuable adjunct to an undertaking, whether used to distinguish manufactured articles, a place of business, or a corporation, commercial, or one formed not for pecuniary gain.

2. All that is required to bring into activity the injunctive powers of the court is to inform it that the complainant's trade is in danger of harm from the use of. its name by the defendant in such a way as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of, are those of the complainant.

3. A court of equity will lend its aid to restrain the unfair use of the name of a corporation formed not for pecuniary profit, to protect its property rights, *i. e.*, the corporate entity, membership, its popularity and influence, and all that goes with them, of which the name is merely the badge.

4. A fraudulent intent need not be shown to invoke the aid of the court, the test being: Is the resemblance calculated to mislead or confuse, to the complainant's damage?

5. Where the complainant was incorporated by the name of "Cape May Yacht Club" to engage in the pastime of yachting and boating by its members, and afterwards certain dissatisfied members seceded and incorporated the defendant, assuming the name of "Cape May Yacht *and Country* Club," and the defendant embarked in the same line of amusement purveying as the complainant was engaged in, and exploited itself in the same immediate community where the complainant's property rights were localized, *i. e.*, Cape May harbor; located its temporary club house at a point of vantage near the inlet to the harbor, where its ensign would first greet and signal a welcoming invitation to yachtsmen bent upon visiting the complainant, and advertised and gave banquets and fetes upon occasions when the complainant was celebrating similar social affairs, the conclusion is irresistible that the defendant imitated in part the complainant's name designedly with a view to attracting attention from the complainant and drawing to itself the patronage and prestige which the complainant would otherwise enjoy, and there can be no doubt left in the mind that the defendant was persuaded in the selection and use of its name by motives which were both selfish and sinister and intended to mislead and confuse.

6. Where the complainant's pennant consisted of a white ground, blue border of one-fifth of the hoist of the flag containing twelve white stars with a large blue star in the centre of the ground, and the flag adopted by the defendant is in all respects as to size, color and design like that of the complainant, except the star in the white ground is red instead of blue—*Held,* that what has been said with reference to the use of the name, applies to the pennants. They are identical save as to the inconspicuous color of the centre star. It would require an informed mind and a trained eye to distinguish them.

*Messrs. McCarter & English,* for the complainant.

*Mr. Lewis Starr,* for the defendant.

BACKES, V. C.

The complainant was incorporated by the name of "Cape May Yacht Club" in 1904, to engage in the pastime of yachting and boating by its members during the summer vacation period. It soon had a large membership, composed principally of summer residents of Cape May. A club house was built at Skellenger's Point, on Cape May harbor, with restaurant and sleeping quarters, where members and their friends and visitors, members of like clubs, were sheltered and entertained. Other inducements to membership included regattas, musicales, banquets and the *entreé* to club houses of, and the courtesy of entertainment by, many similar associations located along the coast and elsewhere. The pennant of the complainant consisted of a white ground, blue border of one-fifth of the hoist of the flag, containing twelve white stars, with a large blue star in the centre of the ground. This was registered in "Lloyd's," a magazine devoted to yachting news. By the ensign, when in position at the mast-head of the member's yacht, the craft and the member were recognized by and known to the fraternity of nautical sportsmen.

The club flourished financially, being sustained by the membership dues and the receipts from the club house entertainments. Its standing and repute with kindred associations were of the best. In the summer of 1912, dissension arose over the building and location of a proposed new club house. Dissatisfied members seceded, organized and incorporated the defendant, assuming

the name of "Cape May Yacht *and Country* Club." It established headquarters on the harbor directly at the inlet, and is now building a large and commodious house on the shores of the harbor, some distance away but nearer to the inlet than the house of the complainant. The flag adopted is in all respects, as to size, color and design, like that of the complainant, except the star in the white ground is red instead of blue, and during the past summer was carried by the members on their boats and displayed by the defendant on a mast in front of its club house. Some confusion occurred in the delivery of mail and of supplies and in news publications in the daily papers, and it may fairly be assumed that confusion prevailed regarding the identity of the flags. In this situation the complainant appeals to this court to restrain the further use of the corporate title of the defendant and of the pennant because their use is violative of the complainant's property rights in its association of membership and the business and affairs carried on by it for the benefit of its members, claiming that the defendant fraudulently resorted to both the name and flag for the purpose of not only beguiling the public into membership in the defendant's organization, under the belief that they were joining the complainant's association, but also to mislead members of other yachting associations into visiting and patronizing the defendant's club house, as well as to induce such other associations to entertain its members, under the impression that they were of the complainant's group.

The jurisdiction of courts of equity to prevent injury from infringement of trade-names has been liberally exercised and applied in all circumstances whenever it appeared that the name was an established, distinctive and valuable adjunct to an undertaking, whether used to distinguish manufactured articles, a place of business, or a corporation, commercial, or one formed not for pecuniary gain. All that is required to bring into activity the injunctive powers of the court, is to inform it that the complainant's trade is in danger of harm from the use of its name, by the defendant, in such a way, as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of, are those of the complainant. *Eureka Fire Hose Co. v. Eureka Rubber Manufacturing Co.,* 69 *N. J. Eq.* (*3 Robb.*)

*159; affirmed, 71 N. J. Eq. (1 Buch.) 300; Van Horn* v. *Coogan, 52 N. J. Eq. (7 Dick.) 380; Wirtz* v. *The Eagle Bottling Co., 50 N. J. Eq. (5 Dick.) 164; Humphrey's Specific Hom. Med. Co.* v. *Wenz, 6 N. J. L. J. 43,* are illustrations of the restraint upon the use of a name employed to distinguish manufactured articles. *Wilcoxen* v. *McCray, 38 N. J. Eq. (11 Stew.) 466; Busch* v. *Gross, 71 N. J. Eq. (1 Buch.) 508; O'Grady* v. *McDonald, 72 N. J. Eq. (2 Buch.) 305,* are instances of interferences to protect names of business places. *Eureka Fire Hose Co.* v. *Eureka Rubber Manufacturing Co., supra; Edison Storage Battery Co.* v. *Edison Automobile Co., 67 N. J. Eq. (1 Robb.) 44; International Silver Co.* v. *Rogers Corporation, 67 N. J. Eq. (1 Robb.) 646; Bear Lithia Springs Co.* v. *Great Bear Spring Co., 71 N. J. Eq. (1 Buch.) 595; The L. Marlin Co.* v. *L. Martin & Wilckes Co., 75 N. J. Eq. (5 Buch.) 39,* are cases in which the use of the distinctive feature of a corporate name of a commercial corporation came under the ban. In *St. Patrick's Alliance of America* v. *Byrne, 59 N. J. Eq. (14 Dick.) 26,* the complainant alleged that the defendants who were suspended members of the complainant, set up an independent and spurious alliance, using the name of the complainant. Vice-Chancellor Reed, in disposing of the point, but not the motion, says: "Now, it is undoubtedly the prerogative of a court of equity to enjoin a corporation that is using the name of another corporation to the injury of the latter. The name may stand as a trade-mark, which a court of equity will protect against infringement."

The cases of *International Committee of Young Women's Christian Associations* v. *Young Women's Christian Association of Chicago, 194 Ill. 194; Benevolent & Protective Order of Elks* v. *The Improved Benevolent & Protective Order of Elks of the World, 111 N. Y. Supp. 1067; People* v. *Rose, 225 Ill. 496; Daughters of Isabella, No. 1,* v. *National Order of the Daughters of Isabella, 83 Conn. 679,* are all authorities supporting the proposition that a court of equity will lend its aid to restrain the unfair use of the name of a corporation formed not for pecuniary profit, to protect its property rights, *i. e.,* the corporate entity, membership, its popularity and influence, and all that goes with them, of which the name is merely the badge.

The defendant insists that the interpolation of the words *"and Country,"* in the complainant's title, as adopted by the defendant, sufficiently distinguishes it from the complainant's, so as to avoid misconception and confusion; that the word "country" spells one of the objects for which the defendant was formed, and indicates its good faith in selecting it as a part of its corporate title, and lastly, that there was no fraudulent intent to counterfeit either the complainant's name or flag.

A fraudulent intent need not be shown to invoke the aid of the court. *The International Silver Co.* v. *William H. Rogers Corporation, 66 N. J. Eq. (21 Dick.) 119.* The test is: Is the resemblance calculated to mislead or confuse, to the complainant's damage? Of course, if a fraudulent intent to deceive is present, the court will take hold, regardless of the consideration whether the defendant would otherwise have the right to use generic terms in its name. *Eureka Fire Hose Co.* v. *Eureka Rubber Manufacturing Co., supra.* This case does not turn upon the question whether the names, in the abstract, are so similar as to lead to uncertainty and confusion. Here the solution is to be found in the use to which the defendant has put its corporate title. The controlling factors, in my judgment, are that after the defection the defendant embarked in the same line of amusement purveying as the complainant was engaged in, and exploited itself in the same immediate community where the complainant's property rights were localized; that it located its temporary club house at a point of vantage near the inlet to the harbor, where its ensign would first greet and signal a welcoming invitation to yachtsmen bent upon visiting the complainant, and that it advertised and gave banquets and fetes upon occasions when the complainant was celebrating similar social affairs, from all of which the conclusion, that the defendant imitated in part the complainant's name designedly with a view to attracting attention from the complainant and drawing to itself the patronage and prestige which the complainant would otherwise enjoy, is irresistible, and there can be no doubt left in the mind that the defendant was persuaded in the selection and use of its name by motives which were both selfish and sinister and intended to mislead and confuse.

The claim that the defendant's pursuits are amphibious, and for that reason the descriptive word "country" is appropriately used in contradistinction to a yachting club pure and simple, is disingenuous. It was feebly averred by some of the witnesses that the defendant contemplated a golf course—a necessary accessory to a country club—to be located over a stretch of land between its club house and a distant hotel; but the testimony shows that for the accomplishment of this it would be necessary to close up a dozen or more intersecting streets and redeem sand and waste lands at a tremendous cost.

What has been said with reference to the use of the name applies to the pennants. They are identical, save as to the inconspicuous color of the centre star. It would require an informed mind and a trained eye to distinguish them. The spirit in which the emblem was adopted by the defendant is so obvious that it cannot be characterized other than as fraudulent.

I will advise a decree enjoining the further use of the name and pennant. The complainant is entitled to costs.