The appeal is from an order by the Chancellor in person denying the prayers of a petition filed on March 8th, 1943. The first prayer was that a previous order of reference in the cause to a Vice-Chancellor be vacated. A second prayer was that, notwithstanding that an answer had been filed in due season, the bill of complaint be struck, first, for alleged technical insufficiency; secondly, because of the alleged spoliation or concealment of certain records; and thirdly, alleged control of the litigation by political influence. *Page 225 
The appellants (defendants below) are John Warren, his wife, and a corporation called the Valco Mortgage Company. The case made out by the averments of the bill indicates a sort of constructive trust, of which the complainant corporation known as "536 Broad Street" claims to be in equity the beneficiary, and which the averments of the bill claim to have arisen in this way: A corporation called "536 Broad Street" was organized to take over and operate a piece of real estate at that address which was subject to a mortgage for $150,000. The defendant John Warren and associates owned one-third of the stock of "536 Broad Street" and Warren was its attorney, treasurer and practical manager. The bill charges that Warren, in the execution of a plan to acquire the property in his own interest and to deprive the corporation "536 Broad Street" of its ownership therein, organized the defendant corporation Valco Mortgage Company, and procured from the owners of the $150,000 mortgage an assignment of that mortgage for $55,000 to the Valco Mortgage Company and in the name of that company made a claim upon the complainant "536 Broad Street" for the full face amount of the mortgage and interest. The bill prays the usual remedies of discovery, accounting, injunction, and so on. So, that quite apart from the technical questions of Chancery procedure, it is entirely clear that a case for a court of equity is presented by the bill, to which answer was filed in due course. It was claimed below, and it is claimed here, that, assuming the merit of the bill, it should have been dismissed on the ground of laches which was set up in the answer. But the doctrine of laches has not the binding force of a statute of limitations. Cases are not infrequent in which our courts, where the defense of laches was interposed, declined to dismiss the bill as in case of sustaining a demurrer, but allowed the matter to go to final hearing at which the facts might be fully inquired into. E.G. Sobota v. Shaffer, 105 N.J. Eq. 459;Commercial Trust Co. v. Belhall Co., 119 N.J. Eq. 30, 34.
The appeal is presented under seven points.
The first point is that the refusal to dismiss the bill was erroneous, and an abuse of discretion because "the petition *Page 226 
disclosed" that the bill was filed as an instrument of blackmail. But at best the allegation of the petition in this regard would not be finally dispositive of the facts. The facts would have to be ascertained by a suitable trial.
The second point is that "the petition disclosed that the suit in the Court of Chancery was politically controlled * * * and that the Vice-Chancellor to whom the cause had been referred was prejudiced against them" (the defendants); and that he was not acting as an independent jurist and that defendants could not have a fair trial before him. On a careful examination of the petition and the proofs, however, we fail to find any factual support of this claim.
The third point is in substance that the bill of complaint should have been dismissed for laches. This has already been considered.
As to Point IV the same may be said.
The fifth point seems to be a repetition of what has already been considered under the second point, and needs no further discussion.
The sixth point is that the refusal of the Vice-Chancellor to whom the cause had been referred to grant a further continuance amounted to a violation of the Fourteenth Amendment of the National Constitution. The practical complaint seems to be that the Vice-Chancellor to whom the cause was referred acted unreasonably, and hence illegally, in refusing further adjournment of the hearing, but he seems to have been extremely lenient judging from an examination of the dates, because the cause was at issue in July, 1942, after answer, and the following dates were successively set by the Vice-Chancellor. The first date set was November 24th, 1942, and at Mr. Warren's request the hearing was continued to December 16th, then to January 12th, 1943, January 27th and 28th, 1943, February 3d 1943, and March 9th, 1943. All of these dates, except the first, were set at Mr. Warren's request; and finally on March 8th, 1943, the day before the last date set for the hearing, Mr. Warren made application to the Chancellor to vacate the order of reference, and to dismiss the bill; and the denial of these applications is the basis of this appeal. *Page 227 
The seventh and last point is that the action of the Chancellor in invoking rule 118 of the Court of Chancery as the reason for denying the application made to him to strike the bill was a violation of the constitutional rights of the defendants. Rule 118 provides that "when a cause shall be specifically referred to a Vice-Chancellor * * * all proceedings in it to the final decree shall be had before him; * * *." This has been a standing rule of the Court of Chancery for many years and, so far as we are aware, never previously challenged. It appears also to be reasonably necessary to the proper conduct of the business of the Court of Chancery: and the Chancellor acted entirely within his discretion in refusing to ignore the rule by entertaining a motion to dismiss the bill while the reference was in force. No doubt the Chancellor had the power to recall the case from the Vice-Chancellor if he had seen fit to do so, but that was a matter that rested wholly in his own discretion, and there is nothing to indicate that that discretion was in any way abused.
Considerable space is devoted in the brief for appellants to the claim that further continuance of the hearing should not have been refused, because, while the present suit was in progress, Mr. Warren had accepted retainers in an important criminal prosecution, and in a proceeding looking toward the removal from office of the Hudson County Tax Board; and that his efforts therein had so exhausted his strength that he became physically unable to prepare for and attend the hearing in the present cause. But it is to be observed that he was under no duty to accept a retainer in either of these matters, whereas in the case at bar he and his wife are defendants, charged with fraud and breach of trust in buying up a mortgage for the purpose of enforcing it against the very corporation of which Warren was titular treasurer and practically the general manager. It seems clear to us that in that situation his voluntary participation as counsel in other litigations, allegedly and doubtless of a political character, while the present cause was in progress, was properly considered to be of no sufficient ground for continued adjournments of the hearing, even though that participation was detrimental to his health. As to the suggestion that the Vice-Chancellor to *Page 228 
whom this cause was referred was influenced in any way in his conduct thereof by political considerations, we need only say that it is too obviously scurrilous to merit any discussion.
The order under review will accordingly be affirmed.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, JJ. 13.
 For reversal — None. *Page 229