## Societa di Mutuo Soccorso, Christoforo Colombo, Appellant, v. Lombardo et al.

Argued September 27, 1944. Before MAXEY, C. J., DREW, LINN, PATTERSON and STEARNE, JJ.

reargument refused November 27, 1944.

*Alvah M. Shumaker,* for appellant.

*John S. Powers,* with him *Charles V. Ross* and *Joseph Solomon,* for appellees.

OPINION BY MR. JUSTICE DREW, October 31, 1944:

This appeal is from a final decree in equity, overruling exceptions and dismissing a bill. Plaintiff, Christopher Columbus Society, is a corporation of the first class, incorporated in 1916 by the Common Pleas Court of Lawrence County, for social and beneficial purposes. It brought this proceeding to restrain a group of women who had been members of its "Ladies Auxiliary", but who are no longer recognized as such, from using the name "Christopher Columbus Auxiliary" or otherwise representing themselves as the Auxiliary to plaintiff Society.

Prior to 1937 the Society never had a ladies' auxiliary, but in October of that year, by resolution regularly

adopted, it created one, the membership to consist of the wives and daughters of the members of the Society. In 1941 the Auxiliary had 129 members. All the individual defendants were members. Until October, 1941, the relations of the Society and the Auxiliary were entirely amicable. About that time it became noised about that there was a shortage in the treasury of the Auxiliary, that its funds had been embezzled, and starting from that, because the Society insisted on an audit and investigation, the members divided into two groups—those in favor of the investigation and those against it. All the individual defendants were in the latter group, and they withdrew from the meeting and the Auxiliary when, in a meeting of the entire membership, the issue was resolved against them. They immediately established themselves in other quarters, and although no longer associated in any way with the Society, have continuously since held themselves out as its Auxiliary by the use of the name "Christopher Columbus Auxiliary". The old Auxiliary has maintained its organization and its close relationship with the Society. The new organization, formed by the individual defendants, is not an Auxiliary to the Society, in no way functions with the Society, and its use of the name "Christopher Columbus Auxiliary" is misleading. This has caused confusion, misunderstanding and mistakes in the community in which the rival organizations function. On one occasion the two organizations appeared in the same parade, with the result that there was argument and fighting. The police were called and they forbade either group to parade. The old Auxiliary continues to hold its meetings in the Society's hall, and with the express approval of the Society conducts its business and affairs as its Auxiliary and continues the use of the name "Christopher Columbus Auxiliary". Inasmuch as the individual defendants of their own free will left the Auxiliary, and the record clearly shows they did, they can have no just complaint; and obviously they cannot carry away with

them the name which the Society gave to its Auxiliary. There are property rights involved, but the one here pressed is to the exclusive use of the name "Christopher Columbus Auxiliary".

The learned chancellor got the impression that the individual defendants remained as the members of the old Auxiliary and that the others retired to form a new Auxiliary, associated with plaintiff Society. We find no warrant for this conclusion in the testimony. The non-withdrawing members continued the Auxiliary with the approval of the Society. A new Auxiliary was not formed by the Society, but this was attempted by the withdrawing members, the individual defendants, and against the protests of the Society and its Auxiliary, which protests were for the principal reason that the new organization insisted upon using the name of the old Auxiliary.

In this case there is but a simple question of fact—the use of a name which has been adopted and in use for years, and which now another in an unfair manner attempts to usurp. That cannot be done. We said in *Amer. Clay Mfg. Co. v. Amer. Clay Mfg. Co.,* 198 Pa. 189, 196-197, 47 A. 936: ". . . the authorities have settled that the exclusive right of a corporation to its name is one that of itself carries the presumption of injury by interference and will therefore be protected."

In *B. & L. Ass'n. v. B. & L. Ass'n.,* 159 Pa. 308, 311, 28 A. 215, Chief Justice STERRETT, speaking for the Court said: "The name being an essential in plaintiff's corporate existence, its further wrongful use by defendant will have a natural tendency to injuriously affect plaintiff's identity and business. For this the law has no adequate remedy and resort was properly taken to the equitable remedy by injunction . . ." While the cases cited involved business corporations, the same reasoning applies to a non-profit corporation. It was so held in *Cape May Yacht Club v. Cape May Yacht and Country Club,* 81 N. J. Eq. 454, 86 A. 972. It was there

said that equity will lend its aid to restrain the unfair use of the name of a corporation not for pecuniary profit to protect its property rights, i.e., the corporation, entity, membership, its popularity and influence and all that goes with them, of which the name is merely the badge.

Having voluntarily retired as members of the Auxiliary of plaintiff Society, the individual defendants no longer are affiliated with it in any way. Since they persist in using its name, to the detriment of the Society and its Auxiliary, they should have been restrained by injunction and the learned court below erred in not so doing.

Decree reversed and record remitted to court below for the entry of a decree in conformity with this opinion.