This is an appeal from an order entered in the Court of Chancery striking out certain portions of a bill of complaint filed by the complainants-appellants, which bill seeks an injunction against alleged acts of unfair competition on the part of the defendant-respondent.
The bill of complaint was filed on December 3d 1947, by the American Automobile Association (also referred to in the bill as AAA) and two affiliate or member clubs whose activities are carried out in this State. The first 19 paragraphs of the bill are taken up with a description of the size, extent of operations, insignia, purposes, objectives and activities of the complainants, together with statements as to the good will which they enjoy and the large sums of money expended in carrying out their activities. In paragraph 20 the defendant is described as a New Jersey corporation which has operated an automobile club since June 9th, 1933, but which is not affiliated with the "AAA."
Paragraphs 21 through 25 of the bill set forth the allegations on which the prayers for injunctive action are based. The portions stricken by the Court of Chancery are contained in paragraphs 22, 24 and 25, which may be partially quoted or summarized as follows: *Page 675 
22. "The name of the defendant was selected with the deliberate design of misleading prospective members of the AAA automobile clubs," particularly in areas of New Jersey where the complainant affiliate clubs operate.
24. Use of the name selected by the defendant has caused great inconvenience and confusion to the complainants through misdelivery of mail and mistaken receipts of telephone calls.
25. Good will of the complainants has suffered because they have been blamed for failures of service on the part of the defendant and because practices of the defendant have been attributed to the complainants.
The prayers of the bill ask that the defendant be enjoined from using the name "Automobile Association of New Jersey;" that it be enjoined from using the symbol "AAA" or any combination of two or three of the letters "A" which would tend to deceive or confuse the public into believing that defendant was associated with the complainants; and that the defendants' officers, agents, c., be enjoined from misrepresenting that defendant is affiliated with the complainants or that the members of the defendant would be entitled to the benefits or services to which members of the AAA and its affiliate clubs are entitled.
On December 10th, 1947, defendant moved to strike out the bill of complaint on the grounds that it was duplicitous; that it failed to allege facts concerning misrepresentation and fraud and particulars of the alleged wrongs, but instead alleged conclusions only, which allegations were insufficient to show a cause of action and right to relief; that it lacked equity and complainants had an adequate remedy at law; and that it showed that the complainants were guilty of laches. The notice of the motion also stated that if the same were denied, the defendant would then apply for an order requiring a fuller and more particular statement of the cause of action, particularly as to the contractual relationships between the complainants. This notice further stated that if the foregoing motions were denied, a motion would be made to strike out paragraphs 21 through 25 on the ground that they alleged conclusions of fact and law and not facts. *Page 676 
A letter opinion was filed by the Vice-Chancellor on which was based an order of the Court of Chancery dated March 8th, 1948. This order provided: (1) that paragraphs 22, 24 and 25 be stricken, together with those prayers asking injunction against use of the name and symbols as mentioned above; (2) that fuller and more particular statements be provided with respect to the misrepresentation and fraud set forth in paragraphs 21 and 23, together with a broader allegation as to misrepresentations made in 1947; (3) that defendant's motion to dismiss the bill upon the ground that it was duplicitous be denied; and (4) that the fuller and more particular statement by the complainants be made within ten days. It is from the order so entered that this appeal is taken.
The notice of appeal filed by the complainants states that such appeal is taken "from the whole and every part of said order." However, the petition of appeal merely contends error in the striking out of the certain portions of the bill. Defendant, being concerned with the broader statement in the notice of appeal, has put forth argument supporting that portion of the order requiring fuller and more particular statements by the complainants. However, we do not conceive that the complainants were aggrieved by this portion of the order, or that such matter need be considered here.
The real question presented on this appeal relates to the action of the court below in striking out three paragraphs and two prayers of the bill. A reading of the letter opinion of the Vice-Chancellor reveals that this action as to paragraph 22 was based on laches and dissimilarity of names sufficient to avoid probability of confusion. The Vice-Chancellor then found that paragraphs 24 and 25 were dependent upon paragraph 22 and should also be stricken. These findings form the elements of the arguments presented by the parties.
As a primary factor related to the question of laches, complainants argue that such question is prematurely raised in a motion to strike, citing Regan v. Cozy Lake, 137 N.J. Eq. 236.
In that case, complainants were given the opportunity to prove reasons for their delay at the time of hearing, and the complainants on this appeal urge a similar opportunity. *Page 677 
As stated in the case of 536 Broad Street v. Valco MortgageCo., 134 N.J. Eq. 224, "Cases are not infrequent in which our courts, where the defense of laches was interposed, declined to dismiss the bill as in case of sustaining a demurrer, but allowed the matter to go to final hearing at which the facts might be fully inquired into." This statement, however, does not establish a firm precedent to be observed, but merely justifies such action on a motion to strike when it is taken by the court. We think that the charge of laches is still available on a motion to strike as it was held to be available on demurrer in the earlier cases. VanHouten v. VanWinkle, 46 N.J. Eq. 380. It is the responsibility of the court to determine whether laches is apparent on the face of the bill or whether such defense should be considered when the matter goes to final hearing.
The bill of complaint now before us was filed over 14 years after the defendant entered into business with the name now complained against. This situation, clearly apparent from the bill itself, must surely be considered sufficient to provoke challenge on the ground of laches. Complainants contend, however, that laches is no defense against future unfair competition, and this is the relief which they seek. In support of this contention, they cite Blue Goose Auto Service, Inc., v. BlueGoose Super Service Station, Inc., 110 N.J. Eq. 547, which states: "It is generally settled that laches will not bar relief against future infringement and unfair competition, though it may bar an accounting of past profits." Actually, then, the complainants are saying that although they may not call upon the defendant to account for what has taken place in the past years, they are entitled to an injunction against future acts of unfair competition.
There can be no question that the Court of Chancery is readily available to protect persons engaged in commerce and trade from unfair practices on the part of their competitors. As said in the case of Cape May Yacht Club v. Cape May Yacht and CountryClub, 81 N.J. Eq. 454; 86 Atl. Rep. 972, and cited in A.Hollander Son, Inc., v. Joseph Hollander, Inc., 117 N.J. Eq. 306,
"All that is required to bring into activity the injunctive powers of the court is to inform *Page 678 
it that the complainant's trade is in danger of harm from the use of its name by the defendant in such a way as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of, are those of the complainant." The issue here is whether complainants' bill provides the information necessary to provoke protective action by the court.
In paragraph 22 it is alleged that defendant's name "was selected with the deliberate design of misleading." Without deciding whether this is the pleading of a conclusion or a fact, it is clear that the only wrong complained of in this paragraph is the selection of the name, an action which was accomplished and completed over 14 years before. There is nothing in this paragraph which refers to the using of the name, which might comprehend a continuing act or series of acts which could cause future harm to the complainants.
If the complainants were aggrieved by the defendant's selection of its name, certainly this wrong took place years ago, and it is a wrong which has been allowed to stand unchallenged through this long period of time. It would be manifestly inequitable to grant relief on the mere basis of the selection of the name, particularly considering complainants' long delay, and there is no pleading in this paragraph 22 of any "danger of harm from the use of its name by the defendant." We believe that this paragraph 22, as pleaded, revealed laches in such an apparent manner that there was no error by the Court of Chancery in ordering that it be struck. Since the action of the court was thus proper on the ground of laches, it is unnecessary to consider the other finding of the Vice-Chancellor with respect to the dissimilarity of the names.
There remains a further question with respect to the other paragraphs (namely, 24 and 25) and those prayers of the bill of complaint which were also stricken. The Vice-Chancellor found that these were dependent upon paragraph 22, and therefore should fall with it. We are of the opinion, however, that this action by the court below was not well taken. *Page 679 
It is obvious that there must be a direct relation between the selection of a certain trade name and its use thereafter. On the other hand, it does not follow that inability to take action against the selection will bar action against the future use in a manner which may be shown to be harmful. If this were the rule, then a failure to protest against the selection, for reasons which might be entirely sound, would thereafter impose the penalty of being unable to protest against the use. This distinction is implicit in the doctrine quoted above from theBlue Goose Case.
We think that the inconvenience, confusion, and damage to good will alleged in paragraphs 24 and 25 of the bill involve elements of use which are not wholly dependent upon the element of selection pleaded in paragraph 22. At the same time, however, we believe that these paragraphs, although improperly stricken, are not sufficient as they now stand, and should be supplemented by a fuller and more particular statement of the alleged wrongdoing. By the same token, the prayers of the bill should not have been stricken, and the propriety of the relief asked for therein should await the action warranted by the further statement of the complainants with respect to paragraphs 21, 23, 24 and 25 of the bill of complaint.
The order of the Court of Chancery is modified for the reasons and in accordance with the conclusions stated above.
For modification — THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14. *Page 680