**PERFECTFORM CORPORATION,**
Appellant,

v.

**PERFECT BRASSIERE CO., Inc.,**
Appellee.

No. 12309.

United States Court of Appeals
Third Circuit.

Argued April 14, 1958.

Decided June 11, 1958.

Rehearing Denied July 9, 1958.

738

S. Stephen Baker, New York City (Hirsh W. Stalberg, Shapiro, Rosenfeld, Stalberg & Cook, Philadelphia, Pa., A. Robert Swanson, Jersey City, N. J., on the brief), for appellant.

Asher Blum, New York City (Mock & Blum, New York City, Harry B. Rook, Newark, N. J., Lester F. Dittenhoefer, New York City, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant sued for Lanham Act (15 U.S.C.A. § 1051 et seq.) trade-mark infringement and for unfair competition under 28 U.S.C. § 1338. The district court dismissed the complaint.

It is uncontradicted that the trade-mark Perfectform was adopted in 1944 by appellant in its business of manufacturing ladies slips, panties, pajamas, nightgowns and bed jackets. On May 18, 1948, registration of the trade-mark (#500,444) in the Supplemental Register, under Section 1091 of the Lanham Act, was allowed appellant. The evidence is that after the adoption of the trade-mark in 1944 and starting with the year 1945, plaintiff advertised its mark regularly. Its general advertising expense steadily increased from then on [1] through 1952 in which year it reached a peak of $11,461.00. Appellant's sales of Perfectform slips and petticoats showed corresponding increases through 1951; after that, a marked decline. As testified to, these in dollars were: "1945, ninety-nine thousand; 1946, a hundred and forty-nine thousand; 1947, four hundred and forty-two thousand; 1948, seven hundred and eighteen thousand; 1949, seven hundred and eight thousand; 1950, seven hundred and sixty-five thousand; 1951, one million sixty-six thousand; 1952, one million twenty-three thousand; 1953, six hundred and five thousand; 1954, five hundred and forty-five thousand; 1955, five hundred and thirty-two thousand; 1956, four hundred and twelve thousand."

It was in 1951 that the defendant-appellee, a brassiere maker, took the trade-mark Perfect Form using block type and with the name in a straight line. It applied for trade-mark registration of that name in that style to the Patent Office, October 29, 1953. The Patent Office denied the application because the mark was identical with plaintiff's and because defendant's goods and plaintiff's "are closely related it is believed that confusion in trade would result if applicant's mark were allowed over registrant's marks."

A renewal of defendant's application for the trade-mark was filed with the Patent Office April 12, 1955. At that time defendant urged that its use of the name Perfect Form for brassieres was so substantially different from Perfectform Corporation's use that confusion would be unlikely. It said further, "The mark 'Perfect Form' is a combination of the dominant portion of appellant's corporate name and the descriptive term 'form'. Such combination is registrable under the recent decision of Assistant Commissioner Robert in Ex Parte The Celotex Corp., 103 U.S.P.Q. 141. * * *"

The Patent Office on July 29, 1955, again denied the application, holding:

"Applicant's mark is 'Perfect Form', applied to brassieres. Registrant's marks are both 'Perfectform', applied to ladies' slips, panties, pajamas, nightgowns and bed jackets. The marks are identical and the goods are closely related. Applicant's brassieres and registrant's lingerie are articles for women and are often purchased in the

---

1. With the exception of 1951 when the figure was $8865 a decline of $1664 from the previous year.

same shops. Slips are often made with brassieres in them.

"It is believed that concurrent use in the same geographical areas of the marks involved herein would be reasonably likely to cause confusion in trade. Registration is, therefore, refused in view of registration numbers 419,893 and 500,444.

"The refusal is made final."

The original appellee corporation was organized April 5, 1932. That was succeeded in 1936 by a New Jersey corporation of the same name. The name Perfect Brassiere Co., Inc. has been used since 1932; first by the original company and since then by defendant. According to its principal witness, defendant's business from the beginning has been to sell brassieres "Mostly to variety stores, such as Woolworth's, McCrory's, and so forth. All over the country." It designated its brassieres as "Perfect Bra" and also used the word "Perfect" standing alone.

It is agreed that in approximately, July of 1951, the defendant started its use of the mark Perfect Form. And it was testified to by the same principal witness, Abraham Rubinstein, the directing head of the defendant company, that in 1954 after he had been advised by his lawyer of the first rejection of Perfect Brassiere Company's application for the trade-mark Perfect Form, he changed the mark to one word, Perfectform and from straight letters to script slanted letters. The witness said that in 1953 he had been asked by plaintiff to stop using the name Perfect Form.

Testimony by the president of the Perfectform Corporation was to the effect that the tremendous loss in its sales from 1952 through 1956 was because of "the use of my label and my name on a cheap garment". He explained that "we sell a better product, * * * it is at a higher price range, and it is not salable to the basement departments." He stated the retail price of Perfectform garments ran from $2.98 to $8.95 which indicated, according to the trade, that they were mostly expensive slips. He characterized the defendant's 69 cent brassieres as low priced.

There was evidence on behalf of the plaintiff that its sales to Macy's Department Store, New York City, dropped badly in 1955 after Woolworth's in 1954 had opened a large store across the street in which defendant's brassieres were featured. Appellant's president stated that Sliperfection slips of his company, unlike its Perfectform slips showed solid sales increases during the years after the defendant started its use of the Perfect Form and Perfectform marks. Speaking of the increases in Sliperfection sales he said: "Well, in 1951 we had an increase of sales over 1950 of $257,000, in 1952 four hundred thousand over 1950, five hundred thousand in 1953, in 1954 four hundred and ninety thousand over 1950, in 1955 seven hundred thousand over 1950, and in 1956 six hundred and eighty-five thousand over 1950. By company policy, all I can say is, we do over a million dollars of volume." "Q. In what? A. In the Sliperfection slips. Q. Then is it correct to say that the Sliperfection business rose while the Perfectform business fell? A. Yes, sir."

Perfect Brassiere Co. in addition to using Perfect Form and Perfectform as a trade-mark on occasion marketed brassieres as made by Perfect Form. One exhibit in evidence, a photograph of a defendant display, reads "Pock-ette Bra by Perfect Form". A specimen of defendant's advertising attached to the complaint features the word Perfectform in script and toward the bottom of the advertisement appears the language "Look for the Perfectform label."

Defense witness Rubenstein on cross-examination said that during the critical period sales of defendant's brassiere called Wings remained substantially the same while sales of its Perfectform product "nearer tripled than doubled". The same witness stated that the Wings product was sold by the concern "to apparel chains and department stores" with a price range "from one dollar up to two-fifty". The Perfect and later the Perfectform garments on the other hand

were sold "To the variety stores" at prices from 1951 on of "69 cents, a dollar, a dollar forty-nine".

There is some evidence of confusion in the record. The editor of a fashion magazine stated that in accordance with the magazine's practice of sending advertisers a copy of their advertisements in the publication, it actually sent a copy of defendant's advertisement to plaintiff by mistake. The trial judge himself remarked as to this witness, "Well, obviously she was confused." Plaintiff's exhibit P–13 is a letter from what the letterhead characterizes as "America's foremost item merchandise service" to the plaintiff addressed as "Perfect Form Corp." and dated February 28, 1957. It incorrectly speaks of plaintiff's line of brassieres and "that they have been doing quite well". It seeks to help in the increase of such sales.

The complaint in this cause was filed July 18, 1955. The suit was tried April 2 and 3, 1957. On May 10, 1957, Findings of Fact, Conclusions of Law and Final Judgment dismissing the complaint, with costs to the defendant, were filed.

The district judge found that the above referred to trade-mark registration had been allowed plaintiff May 18, 1948 [2] and that under it use of the mark beginning 1944 was claimed; that defendant within six years of the filing of the complaint has been selling brassieres in interstate commerce "with the use of the accused mark 'Perfect Form' displayed as one word and as two words in various forms of display, including script display."

The court also found " * * * defendant's addition of 'Form' in the accused mark to its prior use of 'Perfect' for brassieres beginning in 1932, could not and did not and was not likely to cause confusion or mistake between plaintiff and defendant, or to deceive ultimate purchasers as to the source of origin of defendant's brassieres, or to cause ultimate purchasers to believe that defendant's brassieres were garments of the plaintiff." What defendant did is stated as: "In changing to the accused mark, defendant merely continued the prior business and good will which defendant's predecessor and defendant established for brassieres beginning in 1932." The court states further as a fact finding: "Due to the old and common use of 'Form' in brassiere marks and the common display of 'Form' marks in script, the dominant feature of the accused mark is 'Perfect', as to which defendant has priority in the brassiere trade, beginning in 1932. Ultimate customers who have bought and who will buy defendant's brassieres for use have identified said brassieres and will identify them by 'Perfect', as to which defendant has priority."

There were other findings that "defendant has not violated any rights of plaintiff"; that "Defendant has not made any unlawful gains, profits or advantages by its use of the accused mark"; that "The use of the accused mark has caused no confusion in the trade and the purchasing public has not been misled into believing that the plaintiff is the source of the origin of defendant's brassieres"; that "Defendant's brassieres are low or modestly priced and sold almost exclusively in variety stores or what was called 5 & 10 cent stores. Plaintiff's products are exclusive or prestige items and sold in better department stores, specialty shops and lingerie shops."

Among the conclusions of law it was held that "If plaintiff's registered mark has any status as a trade-mark or tradename, it is a very weak mark"; "The scope of plaintiff's registration and good will must be and is restricted to the goods which plaintiff has sold, which excludes brassieres". It was also held that:

"By reason of defendant's prior use of 'perfect', defendant had the right at any time, to add the feature-

2. The court further found that plaintiff claimed ownership of an earlier Registration No. 419,893 for the same mark which was granted March 5, 1946 under the Trade-Mark Act of March 19, 1920.

less and descriptive word 'Form' which has been and is common to the brassiere trade, and to use the common and featureless script display."

With reference to the denial by the Patent Office of defendant's applications to register the accused mark, a conclusion of law states:

"Under 15 U.S.C.A. § 1094, plaintiff's Supplemental Register certificate is not governed by 15 U.S.C.A. § 1066, which provides for an interference in the U. S. Patent Office between a registration and an application for registration in the U. S. Patent Office in certain cases.

"Hence the refusal of the U. S. Patent Office to register the accused mark to defendant has no effect in this litigation, because defendant was debarred by the current Lanham Trade-Mark Act from demanding an interference, in order to establish defendant's twelve years' priority in 'Perfect' for brassieres."

██ In his Conclusions of Law the trial judge decided that the plaintiff's claim of unfair competition is governed wholly by federal law. Actually no problem arises in this appeal with respect to the law controlling the particular unfair competition charged. At the very least in this circuit we agree with the New Jersey decisions that likelihood of confusion is the test and that secondary meaning for plaintiff's mark need not be established in order for plaintiff to make out a cause of action. Campbell Soup Co. v. Armour, 3 Cir., 1949, 175 F.2d 795, 796–797; Vaughan Novelty Mfg. Co. v. Greene Corporation, 3 Cir., 1953, 202 F.2d 172, 174, note 6; House of Westmore v. Denney, 3 Cir., 1945, 151 F.2d 261, 265; Lorraine Mfg. Co. v. Lorraine Mfg. Co., D.C.N.J.1952, 101 F.Supp. 967, 969.

At least since the opinion of Vice Chancellor Backes in Cape May Yacht Club v. Cape May Yacht and Country Club, Ct.Ch.1913, 81 N.J.Eq. 454, 456, 86 A. 972, 973, New Jersey has held that in the present type of situation "All that is required to bring into activity the injunctive powers of the court is to inform it that the complainant's trade is in danger of harm from the use of its name by the defendant in such a way as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of, are those of the complainant." And see American Automobile Ass'n v. Automobile Ass'n of N. J., E. & A. 1948, 142 N.J.Eq. 673, 61 A. 2d 148; Squeezit Corporation v. Plastic Dispensers, Inc., 1954, 31 N.J.Super. 217, 106 A.2d 322; Lorraine Mfg. Co. v. Lorraine Mfg. Co., supra.

██ That the use by defendant of practically a replica of plaintiff's trademark was deliberate is conclusive from the facts of its receipt in 1953 of Perfectform's protest and of the denial in 1954 by the Patent Office of its application for a block, separated design of the name on the specific ground that it infringed upon plaintiff registrant's mark. The fact that the mark is basically descriptive would hardly excuse fraudulent appropriation of it. Shaver v. Heller & Merz Co., 8 Cir., 1901, 108 F. 821, 827, 65 L.R.A. 878. And "A fraudulent intent need not be shown to invoke the aid of the court. * * * The test is: Is the resemblance calculated to mislead or confuse, to the complainant's damage?" Cape May Yacht Club v. Cape May Yacht and Country Club, supra, 81 N.J.Eq. at page 458, 86 A. at page 974. We held in Cridlebaugh v. Rudolph, 3 Cir., 1942, 131 F.2d 795, 801, that "The test is whether the public is likely to be deceived by the alleged infringing name". In so doing we followed the New Jersey rule as outlined in Rosenthal v. Blatt, 1912, 80 N.J.Eq. 90, 93, 83 A. 387. And see Lanham Act, 15 U.S.C. § 1114(1). Direct competition need not necessarily exist between the parties. 51 West 51st Street Corporation v. Roland, 1946, 139 N.J.Eq. 156, 50 A.2d 369. Under New Jersey law where the trade name of another concern is adopted, apparently to take advantage of that concern's good will, equity will grant relief though the wronged plaintiff does

not have an exclusive property right in that name. Weiss v. Stork and Gift Shop, 1946, 137 N.J.Eq. 475, 45 A.2d 688, and cases there cited. The Federal principle is similar. In Rosenberg Bros. & Co. v. Elliot, 3 Cir., 1925, 7 F.2d 962, the trade-mark of a manufacturer of coats, vests and pants was held infringed by defendant's use thereof on hats and caps. We said at page 967, "Although there is no testimony that a purchaser was so deceived, we are of the opinion that the advertisements tend to readily deceive the public, * * *. As we have said, the vendors of the hats and caps on sale in the respondent's store had their own trade-mark 'Park.' They seemed satisfied with it until the complainant's mark became known nationally. We find nothing which justified them in enlarging their trade-mark to embrace the precise words of the complainant's trade-mark and thereby to reap the advantage of the wide publicity which the complainant had earned by the expenditure of large sums of money in advertising. It is possible unfairly to obtain such advantage by the use of similar words and get up in advertising matter even though the wares of the contesting parties do not actually come into competition. Against a wrong of this kind courts of equity will grant relief."

In Youthform Co. v. R. H. Macy & Co., D.C.Ga.1957, 153 F.Supp. 87, a small manufacturer of brassieres, having no more than minor damage, waiting ten years before commencing suit and with no Patent Office ruling in its favor, was allowed an injunction against a slip manufacturer and a department store selling the slips from using plaintiff's label containing the words "Youthform" written in script. The facts in reverse are quite similar to those at bar but much weaker. Because of the laches there existing no accounting was ordered. The decision is illuminative as to the very real association between the two products. The court stated in that opinion, at page 92:

"As stated above, plaintiff and defendant are not competitors, as plaintiff primarily sells brassieres and defendant primarily sells slips, etc. However, as shown by many of the advertisements placed in evidence, both brassieres and slips show the female form clad in both a brassiere and a slip, which connects the two together in the public mind. Furthermore, each garment is sold largely in the same stores, though frequently at different counters.

\* \* \* \* \*

"There is therefore, the probability of confusion between defendant's slips sold under the tradename 'Miss Youth Form' or 'Youth Form', especially under the one word in script 'Youthform' as to plaintiff's brassieres under plaintiff's trademark."

The record contains as exhibits a brassiere and slip made by the same manufacturer and carrying like labels for both. Defendant's witness Rubenstein agreed that bra-top slips, a combination of brassieres and slips into one garment, have been on the market for many years. There is evidence of at least four manufacturers putting out bra-top slips and that since 1955 that kind of garment "is beginning to sell very well".

It is impossible reasonably to avoid the conclusion that the undergarments in dispute are closely related; that the ordinary customer, having a knowledge of plaintiff's slips and confronted with plaintiff's identical label on defendant's brassieres, is likely to be misled into accepting the latter as originating from the plaintiff despite the fact that there is no direct competition between the parties' wares. Safeway Stores v. Sklar, D. C.E.D.Pa.1947, 75 F.Supp. 98, 103. The law, New Jersey and Federal, is that such business tactics are unfair and that plaintiff is entitled to be protected against them. National Drying & Machinery Co. v. Ackoff, D.C., 129 F.Supp. 389, affirmed National Dryer Mfg. Corp. v. National Drying Machinery Co., 3 Cir., 1955, 228 F.2d 349, certiorari denied 1956, 351 U.S. 906, 76 S.Ct. 694, 100 L. Ed. 1442.

## FINDINGS OF FACT

 The second part of the tenth finding of fact reads:

" * * * and defendant's addition of 'Form' in the accused mark to its prior use of 'Perfect' for brassieres beginning 1932, could not and did not and was not likely to cause confusion or mistake between plaintiff and defendant, or to deceive ultimate purchasers as to the source of origin of defendant's brassieres, or to cause ultimate purchasers to believe that defendant's brassieres were the garments of plaintiff."

This is a conclusion from facts and as Judge Staley said in Sears, Roebuck & Co. v. Johnson, 3 Cir., 1956, 219 F.2d 590, 591: "This court, by examining the basic facts found by the district court, can determine, as advantageously as the district court can, whether or not an inference of likelihood of confusion is warranted." Our conclusion from the basic facts is that likelihood of confusion of the source of origin of defendant's brassieres does exist. The second part of said finding will be set aside.

The fourteenth finding of fact reads:

"In changing to the accused mark, defendant merely continued the prior business and good will which defendant's predecessor and defendant established for brassieres beginning in 1932."

This is clearly wrong in fact. It will be set aside.

The first of the two No. 15 findings reads: "Due to the old and common use of 'Form' in brassiere marks and the common display of 'Form' marks in script, the dominant feature of the accused mark is 'Perfect', as to which defendant has priority in the brassiere trade, beginning in 1932. Ultimate customers who have bought and who will buy defendant's brassieres for use have identified said brassieres and will identify them by 'Perfect', as to which defendant has priority." There is no justification in the record for these conclusions.

In addition the attempt is made, as with finding No. 10, to break down the one trade name into two distinct segments and then destroy each segment separately. We find no warrant for such practice. Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co., 1919, 250 U.S. 28, 29, 39 S.Ct. 401, 63 L.Ed. 822. The finding will be set aside.

The second #15 finding reads: "Ultimate customers who buy brassieres for use have not been confused and will not be confused by the script display of one of the forms of the accused mark." The test laid down by the statute and the reported cases cited above is "likelihood of confusion" which we have already pointed out exists in this litigation.

Finding No. 18 that "The defendant has not violated any rights of plaintiff" is a conclusion from the facts. It is erroneous. It will be set aside.

Finding No. 19 reads: "Defendant has not made any unlawful gains, profits or advantages by its use of the accused mark." It is impossible to so conclude at this stage of the proceedings. Defendant has been unfairly competing against plaintiff with the accused mark. And there is sufficient evidence before us to call for an inquiry on whether plaintiff has been damaged thereby and if so in what respects. The finding will be set aside. Finding No. 20 will be set aside for the same reasons.

If Finding No. 24 is intended to state the test of unfair competition it is erroneous. The portion of its factual statement that "The use of the accused mark has caused no confusion in the trade * * *" is contrary to the record. It will be set aside.

## CONCLUSIONS OF LAW

Conclusion No. 6 holds that defendant has the right to use the accused trademark. It is erroneous and will be set aside.

 The second paragraph of conclusion No. 7 is wrong in law. It will be set aside. A claimed interference arises from an alleged priority in the disputed mark. Defendant never possessed pri-

744

ority in the mark Perfectform. It had a prior use of Perfect which gave it no rights in Perfectform.

Conclusion No. 8 holds that the unfair competition branch of this suit is governed solely by federal law. As we have already stated, New Jersey and federal law are substantially the same respecting the kind of unfair competition presented in this action. Since therefore this conclusion is not decisional it need not be further discussed.

■ The portion of conclusion No. 9 stating that defendant has not competed unfairly with plaintiff or violated any of the latter's rights is erroneous. It will be set aside. The remaining part of the conclusion declaring that defendant has not infringed upon plaintiff's Registration No. 500,444 brings us to that question which cannot be considered by us at this time because of the state of the record.

In order to sustain the technical trademark infringement it alleges, plaintiff must establish a secondary meaning for its descriptive mark, not in the brassiere trade respecting which the district judge held it had no secondary meaning, but in its own slip trade. The court found that plaintiff's trade name was "a very weak mark". He even qualified this by prefixing "If plaintiff's registered mark has any status as a trade-mark or trade-name * * *." Whether the mark is "very weak" or not may or may not be important. In the National Drying decision, supra, the mark "National" was held to be "almost as weak a mark as can be found", but it was upheld both as to infringement and unfair competition. What is important beyond doubt is that in the whole elaborate group of findings of fact and conclusions of law there is not one word attempting to properly void plaintiff's mark.

Plaintiff argues strongly that certain of the findings and inferences therefrom plus the trial evidence of its mark's secondary meaning make it mandatory on us to uphold its claim of technical trademark infringement. However, as we have stated, in our view it is necessary to send this phase of the suit back to the district court for decision as to whether plaintiff has sustained its claim in this connection. We therefore will set aside the first part of the 9th conclusion of law that "defendant has not infringed upon plaintiff's Registration No. 500,444 * * *" since the distrct court did not pass upon the validity of plaintiff's trademark. Under the facts, until that is done there can be no finding as to infringement.

ACCOUNTING

■ We are not at all sure that an injunction to prevent future use of the name Perfectform or Perfectform in script, block letters or otherwise by the appellee will satisfy the equities of this case. There is evidence of substantial damage and loss of profits to the plaintiff which is attributed to the unlawful use of its trade name by appellee. This demands a thorough inquiry. Cf. Morgenstern Chemical Co., Inc. v. G. Searle & Co., 3 Cir., 1958, 253 F.2d 390.

The judgment of the district court will be reversed and the cause remanded with the direction that:

1. Under the first count of the complaint appropriate findings be made with respect to plaintiff's registered trademark.

2. Judgment be entered in favor of the plaintiff and against the defendant on the second count of the complaint and that an injunction issue against the defendant-appellee, its agents, servants, employees, successors and assigns, from using plaintiff-appellant's name Perfectform, as one word or two, and from any further acts of unfair competition arising from its unlawful appropriation and use of plaintiff-appellant's trade name Perfectform.

3. An accounting be had to ascertain whether plaintiff has sustained any damage and loss of profits from defendant's unfair competition and if so, in what respects.

4. For such other and further proceedings as are not inconsistent with this opinion.