STONE MANUFACTURING CO. and Stonco Electric Products Company, Plaintiffs,

v.

MOLDCAST PRODUCTS, INC., and Moldcast Manufacturing Company, Defendants.

Civ. No. 139–58.

United States District Court
D. New Jersey.

May 15, 1959.

As Amended June 23, 1959.

Jacob Slavitt, Newark, N. J., Abraham Friedman, Brooklyn, N. Y., Abraham Goodman, New York City, of counsel, for plaintiffs.

Hilowitz & Stein, Bloomfield, N. J., James & Franklin, Harold James, New York City, of counsel, for defendants.

MEANEY, District Judge.

The plaintiffs, holders of two design patents, have instituted this action against the defendants alleging infringement on the patents and have joined a complaint of infringement of the plaintiffs' copyright for a product catalogue.

There is a further allegation of unfair competition by the defendants in manufacturing, marketing and advertising goods similar to those of the plaintiffs which are covered by design patents, and in reproducing, simulating and copying catalogues and publications of the plaintiffs, which reproductions were for the purpose of fostering the sales of defendants' goods unfairly competing with the plaintiffs. Stone Manufacturing Co. and Stonco Electric Products Company are respectively the manufacturer and sales distributor of outdoor lighting fixtures. The defendant Moldcast Products, Inc. manufactures aluminum castings, and preceded in existence the defendant Moldcast Manufacturing Company which manufactures and sells outdoor lamp holders.

The parties to this litigation are all New Jersey corporations and since the interests of each plaintiff are to all intents and purposes identical, the plaintiffs will be referred to generally as Stonco. The same is true of the defendants and for convenience they will be referred to as Moldcast. If individual designation be required, it will be used.

Jurisdiction of this court is based on Patent Laws and the Judicial Code of the United States.

Preliminary to further discussion it may be well to state that sealed beam lamps, for the holding of which the involved products of both companies are intended, were developed just prior to World War II. Their use in the field of outdoor lighting was negligible until the early part of 1946. At that time plaintiff Stone Manufacturing Co. was formed and engaged in the development of outdoor lighting with the sealed beam lamp through the manufacture and use of lamp holders suitable for such lamps. The holder consisted of an aluminum casting forming a housing with an appropriate socket for the sealed beam lamp. It was suited for a variety of mountings for advantageous placement in outdoor use. The original holders had plain surfaces and had no particularly identifying design, utility being their immediate aim. In 1952 Stonco initiated a program for the development of distinctive designs with aesthetic as well as utilitarian aims, and in 1955 produced holders which had exterior circular ribbing instead of the plain surface. (Throughout this discussion horizontal refers to the circumferential ribbing, and axial or vertical to those running at right angles thereto.) In 1956 this ribbing design was applied to Stonco's large floodlight type holders as well as the other units redesigned and produced in 1955. Two patents, U. S. Design Patent No. 175,528 (Sept. 13, 1955) and 179,877 (Mar. 19, 1957), were issued to Leonard Atkin, Stonco's industrial designer, as assignor to the plaintiff Stone Manufacturing Co. There were some slight variations in the horizontal ribbing of the first patent design but essentially the rib design was preserved. The holders had been varied to include parabolic and bell shapes but both retained the rib design. Some of the holders had a hinged glass front but that did not affect the rib feature. There is some evidence of experimentation by Stonco with overall vertical instead of horizontal ribs, but that has no significant bearing on the case.

In the latter part of 1956 defendant Moldcast Products, Inc. broadened its limited field of operations in the business of outdoor illumination and formed Moldcast Manufacturing Co. for this phase of its activities. Its products were "bullet" shaped holders, with a smooth, and often finished surface. Less than a year afterward Moldcast introduced for marketing its series M330, a medium sized lamp holder, and its series M5600 and M6400, both large sized holders suitable for flood lamps. The new issues were fairly similar to like holders produced by Stonco's cup shaped and parabolic shaped fabrications. In addition to the new shape, Moldcast's new creations contained circumferential ribbing which substantially aped the ribbing on Stonco's holders.

The only appreciable differences from the standpoint of design were to be found, in the case of the smaller holder, in the contour at the rear end of the holders and in the flare of the vertical ribs located on the top, bottom and sides. Notwithstanding these differences and the fact that Moldcast's MA6400, equipped with a glass cover and an airflow head which increases its overall size, and the fact that it lacks a side vertical rib, inspection of the products of both companies creates the impression of substantial identity among them. The incidental providing of space for display of trade names does not affect the distinctiveness of the plaintiff's rib design and the substantial copying of it by the defendant, as hereinbefore indicated.

There is, however, another question of some importance which has been alleged by the defendant. It is well settled that a design patent cannot foreclose use in an accused item of identical or similar features which are mainly *functional*. The defendant herein asserts that rib and wing constructions have been well and long recognized as conducive to the solution of the problem of heat dissipation. Certain salient facts enter into the overall consideration of this contention. Aside from the scientific angle there is no evidence that any tests were initiated by either party to determine the amount of heat dissipation effected by the use of ribs, although to justify its position in this respect defendant urges that "it was common knowledge that ribs increased heat dissipation." Further, the defendant still produces and markets plain surfaced, bullet shaped holders for 150, 300 and 500 watt lamps with no suggestion of the alleged heat dissipating feature of ribbing. But above and beyond these indicia is the evidence which was adduced anent the degree of heat dissipation resulting from the use of axial and horizontal ribs. This court is satisfied that there is a minimal amount of heat dissipation in the accused designs. True the amount of surface of the holders is increased by ribbing, but its eventual effectiveness for the purpose intended is not sufficient to make it so functionally important as to defeat the validity of the design patent.

In design patents the standard of patentability is not and cannot be objectively determined by absolute standards. In the instant case the prior art has been cited as evidencing the existence of ribbing prior to the Stonco type. Instanced among others is the Mehr Patent D 163,812 (1951) which has ribbing and the same general configuration as Stonco D 175,528. But this court is of the opinion that Stonco's patent while it "avails itself of suggestions old in art" nevertheless "produce(s) a new and pleasing impression on the aesthetic sense" and hence is patentable. Matthews & Willard Mfg. Co. v. American Lamp & Brass Co., 3 Cir., 103 F. 634, 639. The same line of thought is applicable to Stonco's patent covering the larger holder, after contrast with Dake Patent No. 1,634,399 (1927) which claims a corrugated housing as part of its light housing product. Stonco's design is artistically superior to Dake and represents a new and more pleasing effect on the eye of the beholder. The court also recognizes a patentable difference between the earlier and subsequent Stonco designs notwithstanding the generic feature of the rib construction initiated by the first issued patent.

There is an additional claim of infringement of Copyright Registration No. A 273,756 as a result of defendant's publication of its catalogue "Moldcast Outdoor Lighting." It is admitted that defendant had access to plaintiff's catalogue before and during the production of its own catalogue. Plaintiff charges (1) that defendant utilized the same general method of illustration and text description; (2) that four specific drawings of lamp holder accessories were copied from some appearing in plaintiff's catalogue; (3) that some text descriptions are copied literally; and (4) that the same catalogue number is used to

designate one of Moldcast's basic holders as that used for the Stonco counterpart.

Examination and comparison of the respective catalogues show that while piecemeal objections may be made to the plaintiff's assertion of infringement, on the whole there is very definite appropriation, whether conscious or unconscious, of the plaintiff's catalogue format and contents, carried so far as to indicate adoption of word for word descriptive writing.

The final charge leveled at defendant by plaintiff is one of unfair competition. From the evidence the inference is unavoidable that the defendant entered upon and carried out a course of conduct whereby it enhanced its own economic standing by copying the plaintiff's products and capitalizing on the advantages gleaned from the plaintiff's ingenuity and enterprise. Whether this was done maliciously or with honest misapprehension of its own acts need not be considered as this would not alter the legal consequences. Nor need there be weighed the question of "secondary meaning" as both the courts of New Jersey and the United States Court of Appeals for the Third Circuit are in accord on the proposition that likelihood of confusion is the test and that "secondary meaning for plaintiff's mark need not be established in order for plaintiff to make out a cause of action" for unfair competition arising out of defendant's use of plaintiff's mark. Perfectform Corporation v. Perfect Brassiere Co., 3 Cir., 256 F.2d 736, 741. Indication of actual confusion was had from evidence of a tendency among purchasers to identify Stonco holders by the ribbed design.

There is a request made by plaintiff for an accounting but the evidence of injury at this time would seem slight, not warranting the accounting requested.

An injunction may issue against further infringement and unfair competition.

The foregoing shall serve as findings of fact and conclusions of law.